**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


| | |
|---|---|
| **LIBERTY MUTUAL INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **No. 07-3114** |
| **JOTUN PAINTS, INC.,** *et al.* | **SECTION:  I/5** |


<u>**ORDER AND REASONS**</u>

Before the Court is a motion for partial summary judgment filed on behalf of plaintiff, Liberty Mutual Insurance Company ("Liberty"), to dismiss the counterclaim of intervenor, Zurich American Insurance Company ("Zurich").[1]  In the alternative, Liberty's motion seeks dismissal of Zurich's claims pursuant to Federal Rule of Civil Procedure 24, which governs interventions.[2]  For the following reasons, Liberty's motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**.  Liberty's motion to dismiss for not complying with Rule 24 is **DENIED**.

---

[1] R. Doc. No. 41.

[2] *Id.*

## BACKGROUND

Liberty insured Jotun Paints, Inc., and Jotun, Inc., (collectively, "Jotun") pursuant to four successive primary commercial general liability ("CGL") policies (collectively, "Liberty policies") in effect from January 1, 2002, to January 1, 2006.[3]  The Liberty policies provide that Liberty has an obligation to defend Jotun in certain lawsuits filed against Jotun.[4]

Several lawsuits were filed against Jotun for damages due to Jotun's application of DuroSeal, a coating product Jotun allegedly developed, marketed, recommended, and sold.[5]  DuroSeal was designed to protect marine barges from corrosion; however, DuroSeal instead allegedly accelerated the corrosive process.[6]  The DuroSeal lawsuits include the following:  (1) *Waxler Transportation Co. v. Trininty Marine Products, Inc.*, No. 49-741; (2) *Puettmann v. Trinity Marine Products, Inc.*, No. 54-087; (3) *Marquette Transportation Co. v. Trinity Marine Products, Inc.*, No. 49-605; (4) *LeBouf Bros. Towing Co. v. Trinity Marine Products, Inc.*, No.

---

[3] R. Doc. No. 1, compl.; mot. summ. j., ex. A, Liberty policies.

[4] Compl. ¶ 7; Liberty policies § I(A)(1)(a).  That section provides:
> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Liberty policies § I(A)(1)(a).  Pursuant to the Liberty policies, property damage is defined as:
> a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*Id.* § V(15).  "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *Id.* § (V)(12).

[5] Compl. ¶¶ 12-13, 25; R. Doc. No. 26, intervenor counterclaim ¶ 6.

[6] Compl. ¶ 13; intervenor counterclaim ¶ 6.

50-085; (5) *ACF Acceptance Barge I, LLC v. Trinity Marine Products, Inc.*, No. 49-320; (6)

*Florida Marine Transporters, Inc. v. Trinity Marine Products, Inc.*, No. 49-819; and (7) *J.*

*Russell Flowers, Inc. v. Trinity Marine Products, Inc.*, No. 4:02-CV-245.[7]

      On June 4, 2007, Liberty filed its complaint seeking declaratory relief pursuant to the

Declaratory Judgment Act, 28 U.S.C. § 2201 (2006).[8]  Liberty is seeking a declaration that it has

no duty to defend or indemnify Jotun in *Waxler* and *Puettmann*, two of the lawsuits enumerated

above.[9]  Liberty also argues that it is entitled to reimbursement of any defense costs it incurred in

*Waxler*.[10]

      Zurich also insured Jotun pursuant to primary CGL policies beginning in March 29,

1999, through January 1, 2002 (collectively, "Zurich policies").[11]  Zurich has been paying, with a

full reservation of rights, for a portion of Jotun's costs of defense in all seven DuroSeal

lawsuits.[12]  On September 5, 2007, Zurich intervened in this action, answered Liberty's

complaint, and asserted a counterclaim.[13]

      Zurich's counterclaim seeks a declaration, pursuant to the Declaratory Judgment Act, that

---

[7] Intervenor counterclaim ¶ 6.

[8] Compl.

[9] *Id.* at 12.  Liberty filed this action only with respect to only the *Waxler* and *Puettmann* lawsuits because, it alleges, Jotun did not respond or challenge Liberty's denial of coverage in the other five lawsuits.  R. Doc. No. 61, Liberty's reply in supp. at 2; R. Doc. No. 41-6, mot. summ. j., ex. C, decl. of Marcia Rowell ¶ 4.

[10] Compl. ¶¶ 37-39.

[11] Mot. summ. j., ex. B, Zurich policies.

[12] Intervenor counterclaim ¶ 9; R. Doc. No. 41-3, Liberty's statement of uncontested facts ¶ 5; R. Doc. No. 52, Zurich's response to Liberty's statement of uncontested facts ¶ 5.

[13] Intervenor compl. and counterclaim.  Zurich's motion to intervene was not opposed.  R. Doc. No. 24-3, mot. to intervene, ex., Rule 7.6 certificate.

Liberty has an obligation to defend each of the seven DuroSeal lawsuits listed above.[14]  Zurich further asserts equitable contribution, equitable subrogation, and/or contractual contribution claims; Zurich argues that, pursuant to these legal theories, it is entitled to recover all or a portion of defense costs it has paid defending Jotun in the DuroSeal lawsuits.[15]

Liberty filed this motion for partial summary judgment to dismiss Zurich's counterclaim.  Concerning Zurich's declaratory judgment claim, Liberty argues that Zurich is not entitled to a declaration of Liberty's obligations under the Liberty policies because Zurich is not a party to the policies.[16]  Liberty also contends that Zurich is not entitled to reimbursement under the legal theories of subrogation, contractual contribution, or equitable contribution.[17]  In the alternative, the motion asks the Court to dismiss Zurich's claims regarding all DuroSeal lawsuits except for

---

[14] Intervenor counterclaim at 11.  In 2004, Liberty denied defense and indemnification to Jotun in *Marquette*, *LeBeouf*, *ACF Acceptance*, *Florida Marine*, and *J. Russell Flowers*.  Intervenor counterclaim ¶ 10; Rowell decl. ¶ 4.

Concerning the *Waxler* lawsuit, on February 24, 2004, Liberty denied defense and indemnification to Jotun. Compl. ¶ 17.  On June 18, 2005, Jotun renewed its demand for defense.  *Id.* ¶ 18.  On January 27, 2006, Liberty accepted its duty to defend Jotun beginning on July 18, 2005, and based upon the amended petition in *Waxler*.  *Id.* ¶ 20.  Liberty reserved its right to contest coverage.  *Id.*

Liberty contends that it has no duty to defend Jotun in the *Waxler* lawsuit because:  (1) the damage done to the barges in *Waxler* was done before January 1, 2002, *i.e.*, before the effective date of the Liberty policies; (2) Jotun had knowledge of the problem before the effective date of the Liberty policies and damage was "expected" after that point (the Expected or Intended Injury endorsement excludes this coverage); (3) the fortuity doctrine bars coverage because Jotun was aware of a significant probability that further damage would occur after the inception of the Liberty policies; and (4) the Fungi and Bacteria exclusion precludes coverage pursuant to the second Liberty policy. *Id.* ¶¶ 21-24.

With respect to the *Puettmann* lawsuit, Liberty denied defense and indemnity on January 19, 2007.  *Id.* ¶ 30.  Liberty alleges that it has no duty to defend Jotun in the *Puettmann* lawsuit because of:  (1) the Expected or Intended Injury exclusion, (2) the fortuity doctrine, and (3) the Fungi or Bacteria exclusion.  *Id.* ¶ 30.

[15] Intervenor counterclaim at 11.

[16] R. Doc. No. 41-2, mem. supp. at 5-6.

[17] *Id.* at 6-12.  Specifically, Liberty argues that, to the extent Zurich has fully paid Jotun for its costs of defense, Jotun lacks any right to which Zurich may be subrogated.  Mot. summ. j. ¶ 5.  To the extent Jotun has not been fully paid for its costs of defense, Liberty argues that only Jotun has a right to recover from Liberty, not Zurich. *Id.* Finally, Liberty argues that the Liberty and Zurich policies do not afford Zurich a right to contractual subrogation or contribution.  *Id.*

*Waxler and Puettmann*.[18]

## LAW AND ANALYSIS

### I.    Standard of Law

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c).[19]  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,'

---

[18] R. Doc. 41.

[19] The *Federal Rules of Civil Procedure*, including Rule 56, were amended on December 1, 2007, in order to make the rules "more easily understood and to make style and terminology consistent throughout."  Fed. R. Civ. P. 56 advisory committee's note (2007 Amendment).  The changes "are intended to be stylistic only," rather than substantive.  *Id.*

'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue.  *Id.*  The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

## II.     Discussion

### A.      *Zurich's Declaratory Judgment Claim*

A federal court will not have subject matter jurisdiction and "may not issue a declaratory judgment unless there exists an 'actual controversy.'" *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998); *see* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").  "As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests.'" *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (*quoting Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488,

490 (5th Cir. 1986)).  "[A] declaratory judgment action is premature where a controversy is

'abstract or hypothetical.'"  *Id.* (*quoting United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th

Cir. 2000)).

Zurich seeks a declaration that Liberty has a duty to defend each of the seven DuroSeal

lawsuits.[20]  Liberty contends that, because there is no legal relationship between it and Zurich, no

actual controversy exists and, therefore, the Court lacks subject matter jurisdiction.[21]

"An actual controversy may exist when an insurance carrier seeks a declaratory judgment

that it has a duty neither to defend nor indemnify its insured in a state court action that has not

yet proceeded to judgment."  *Bailey*, 133 F.3d at 368.  Therefore, the fact that the underlying

DuroSeal lawsuits have not yet reached final judgment does not divest the Court of subject

matter jurisdiction over the declaratory judgment claim.  *See id.*; *Scottsdale Ins. Co. v. Bayou*

*Land & Marine*, No. Civ.A. 98-3668, 1999 WL 777714, at *2 (E.D. La. Sept. 30, 1999) (Vance,

J.).

Furthermore, as many courts have acknowledged:

> The respective interests and obligations of insured and insurers, when
> disputed, require determination much in advance of judgment since
> they will designate the bearer of ultimate liability in the underlying
> cases and hence the bearer of the onus and risks of settlement.  So
> viewed, the controversy is then quite proper for a judicial
> determination now.

*ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3d Cir. 1981); *see, e.g.*, *Nautilus Ins.*

*Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994) ("[W]e have frequently

approved the use of federal declaratory judgment actions to resolve disputes over liability

---

[20] Intervenor counterclaim ¶ 15.

[21] Mem. supp. at 5-6.

insurance coverage, even in advance of a judgment against the insured on the underlying claim for which coverage is sought."); *UNR Indus., Inc. v. Cont'l Cas. Co.*, 942 F.2d 1101, 1104 n.1 (7th Cir. 1991) ("This request for a declaration is common practice in insurance disputes, and does not impair jurisdiction."); *Nautilus Ins. Co. v. Curtis Indus. Painting Co.*, No. CIV. A. 98-339, 1998 WL 199372, at *3 (E.D. La. Apr. 23, 1998) (Vance, J.).[22]

Because Zurich's declaratory judgment claim seeks to resolve just such a dispute over insurance coverage, "a substantial controversy of sufficient immediacy and reality" exists between it and Liberty.  Therefore, an actual controversy is present, and the Court has subject matter jurisdiction over Zurich's declaratory judgment claim.

B.      *Contribution and Subrogation Claims*

1. *Contribution*

Liberty argues that Zurich is not entitled to contractual or equitable contribution.[23]  Under Louisiana law,[24] the right to contribution is governed by Louisiana Civil Code article 1804.  La.

---

[22] Liberty cites to *Provident Life & Accident Insurance Co. v. Transamerica-Occidental Life Insurance Company*, 850 F.2d 1489, 1491 (11th Cir. 1988), in support of its contention that Zurich may not bring a declaratory judgment action because it is not a party to the Liberty policies.  Mem. supp. at 5-6.  *Provident Life* is distinguishable.  In *Provident Life*, the court noted that the insured was not a party to the action; further, there was no legal relationship between the parties.  850 F.2d at 1491.  In this case, the insured, Jotun, is a party to the lawsuit.  As discussed later in this order, although there may be a legal relationship between Zurich and Liberty under a theory of legal subrogation, there is an actual controversy as a declaratory judgment action would "establish the rights and obligations between the insurers and the insured as evidenced in the insurance contract."  *Id.* at 1493.

[23] Mem. supp. at 10-12.

[24] Because the Court's subject matter jurisdiction in this case is premised upon diversity of citizenship, state law applies to the substantive issues before the Court.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (*citing Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188, 1194 (1938)).  "In determining which state's substantive law controls, the court applies the choice-of-law rules of the forum state."  *Id.* (*quoting Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97, 61 S. Ct. 1021-22, 85 L. Ed. 1477, 1480-81

Civ. Code Ann. art. 1804 (2008)[25]; s*ee Perkins v. Scaffolding Rental & Erection Serv., Inc.*, 568

So. 2d 549, 550-51 (La. 1990).  "The source of the right to claim contribution is subrogation,"

that is, there is no independent right to contribution that does not stem from subrogation.  *Id.*;

*Frankline Mercantile, III, Inc. v. Glaser*, 806 So. 2d 906, 908 (La. Ct. App. 2002).  Therefore,

because the source of Zurich's right to claim contribution is subrogation, the contribution and

subrogation claims will be considered together.


   2. *Subrogation*

   "Subrogation is the substitution of one person to the rights of another."  La. Civil Code

Ann. art. 1825 (2008); *see A. Copeland Enters., Inc. v. Slidell Mem'l Hosp.*, 657 So. 2d 1292,

1296 (La. 1995) ("[S]ubrogation is the legal fiction established by law whereby an obligation,

extinguished with regard to the original creditor by payment which he has received from a third

person, . . . is regarded as substituting in favor of this third person who in essence steps into the

_____

(1941)).  The Liberty policies were issued in Louisiana.  Compl. ¶ 7.  Because this action involves these insurance policies, Louisiana substantive law governs.  *See Am. Int'l Specialty Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) ("Louisiana choice of law rules dictate[] that in this action involving the interpretation of insurance policies issued in Louisiana, Louisiana substantive law governs our decision."); *Ins. Co. of N. Am. v. W. of Eng. Shipowners Mut. Ins. Ass'n*, 890 F. Supp. 1302, 1306 (E.D. La. 1995) (Vance, J.) ("Louisiana law is the obviously applicable state law since the [insurance] policies were provided to a Louisiana insured in the State of Louisiana.").  Liberty and Zurich agree that Louisiana law applies.

   [25] Article 1804 provides:
         Among solidary obligors, each is liable for his virile portion.  If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary.  If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor.
         A solidary obligor who has rendered the whole performance, though subrogated to the right of the obligee, may claim from the other obligors no more than the virile portion of each.
         If the circumstances giving rise to the solidary obligation concern only one of the obligors, that obligor is liable for the whole to the other obligors who are then considered only as his sureties.

shoes of the original debtor and is entitled to assert, in the measure of what he has paid, the rights and actions of the former creditor.").

"Louisiana law recognizes only conventional subrogation (by contract) and legal subrogation." *Inst. of London Underwriters v. First Horizon Ins. Co.*, 972 F.2d 125, 127 (5th Cir. 1992) ("[E]quitable subrogation does not exist in Louisiana."); *see* La. Civil Code Ann. art. 1825 ("Subrogation . . . may be conventional or legal."); *id.* art. 1855 ("Performance rendered by a third person effects subrogation only when so provided by law or by agreement."). Because there is no right to equitable subrogation or equitable contribution pursuant to Louisiana law, Zurich's claims pursuant to these legal theories are untenable. Accordingly, in order for Zurich to have a right to recover defense expenses from Liberty, Zurich must be conventionally or legally subrogated to the rights of Jotun.

### a. Conventional Subrogation

"'Conventional' subrogation occurs when an obligee receives performance from a third person and in express terms subrogates that person to the rights of the obligee, even without the obligor's consent." *Wilhite v. Schendle*, 92 F.3d 372, 376 (5th Cir. 1996). In support of its contractual subrogation and contractual contribution claims, Zurich cites the "other insurance" provisions[26] of Liberty's and Zurich's policies.[27] The "other insurance" clauses of Liberty's and

---

[26] "An other insurance clause is a provision that seeks to establish how the liability will be shared in the event that there is other valid and collectible insurance applicable to the same insured." *Yarbrough v. Fed. Land Bank of Jackson*, 731 So. 2d 482, 489 n.9 (La. Ct. App. 1999).

[27] The Liberty policies' "other insurance" clauses provide in pertinent part:
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

Zurich's policies, which are pro rata clauses,[28] provide that, in the event two valid primary insurance carriers exist, the insurers will contribute equal shares of payment to the insured.

In order for Zurich to have a valid claim for conventional, *i.e.*, contractual, subrogation or contribution, Zurich and Liberty must be solidarily liable.  La. Civ. Code Ann. art. 1804 ("Among solidary obligors, each is liable for his viril portion."); *see, e.g.*, *Walker v. McCartney*, 700 So. 2d 898, 906 (La. Ct. App. 1997) ("[T]o be entitled to contribution from the non-settling defendant, who is only liable for her pro-rata share of the amount settled, defendant must prove . . . that defendant was solidarily liable with him for the amount . . . ."); *Petrol. Rental Tools, Inc. v. Hal Oil & Gas Co.*, 701 So. 2d 213, 218 (La. Ct. App. 1997); *Simon v. Bloom*, 631 So. 2d 1296, 1298 (La. Ct. App. 1994) ("[The insurers] are not solidarily liable, and [one insurer] has no right of subrogation or other cause of action for contribution against [the other insurer].").

---

> a.  Primary Insurance
> This insurance is primary except when b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share will all that other insurance by the method described in c. below.
> . . . .
> c.  Method Of Sharing
> If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance of all insurers.

Liberty policies § IV(4).  The Zurich policies' "other insurance" clauses contain the same language as the Liberty policies' "other insurance" clauses, cited above.  *See* Zurich's policies § IV(4).

[28] "Other insurance" clauses are generally one of three types: "(1) 'pro rata' clauses, which provide for apportionment of responsibility among insurers, usually either in proportion to their respective policy limits or in equal shares up to the limits of each policy; (2) 'excess' clauses, which provide that policy coverage will apply only as excess insurance over any other valid and collectible insurance; and (3) 'escape' clauses, which provide that the insurer will have no liability if there is other insurance coverage available to the insured, rendering the policy's coverage 'contingent upon the absence of any other coverage.'" *Canal Indem.*, 352 at 258 n.1 (*quoting* William S. McKenzie & H. Alston Johnson, III, 15 Louisiana Civil Law Treatise, Insurance Law & Practice § 228 (2d ed. 1996)).

-11-

"The essential elements of a solidary obligation are that the obligors are obliged to the same thing, that each is liable for the whole performance, and that the payment by one relieves the others of liability toward the obligee." *Great Sw. Fire Ins. Co. v. CNA Ins. Cos.*, 557 So. 2d 966, 968 (La. 1990); *see* La. Civil Code Ann. art. 1794 (2008) ("An obligation is solidary for the obligors when each obligor is liable for the whole performance.  A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee.").

A pro rata clause, such as the one in Liberty's and Zurich's policies, "merely establishes a negative limitation of liability and does not set forth an affirmative right to obtain contribution from other companies." *Tufaro v. Stanley Bishop Real Estate, Inc.*, 422 So. 2d 220, 222 (La. Ct. App. 1982).  This is because "the policies issued [are] distinct and separate contractual obligations . . . .  As such, they create[] only separate obligations and the liability of the insurers to the plaintiff [is] several in nature, thus obviating the chance for one insurer to obtain contribution against another . . . ." *Fasullo v. Am. Druggists' Ins. Co.*, 262 So. 2d 810, 814 (La. Ct. App. 1972).  Therefore, pro rata clauses do not meet the essential elements of a solidary obligation–the payment by one insurer of his pro rata share does not relieve the other insurer from paying his pro rata share.[29]

If the Court finds that the "other insurance" policy provisions are applicable, *i.e.*, if both Liberty and Zurich are primary insurers with valid and collectible coverage for the same loss,

---

[29] In response to questions certified by the United States Court of Appeals for the Fifth Circuit, the Texas Supreme Court discussed at length the nature of pro rata clauses:

> A pro rata clause operates to ensure that each insurer is not liable for any greater proportion of the loss than the coverage amount in its policy nears to the entire amount of insurance coverage available.  The effect of the pro rata clause precludes a direct claim for contribution among insurers because the clause makes the contracts several and independent of each other.

*Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 772 (Tex. 2007).

each insurer will only be responsible for paying its pro rata portion of Jotun's defense costs.  The insurance companies would not be solidarily liable to Jotun because each would only be responsible for a portion of the payment.  Because the pro rata clauses in the Liberty and Zurich insurance policies are separate and distinct, and do not provide a solidary obligation, a right to contractual subrogation or contribution does not exist between the two insurers pursuant to the "other insurance" provisions of the insurance contracts.[30]

### b.  Legal Subrogation

Liberty argues that because Zurich alleges it has fully indemnified Jotun, Jotun has no right to recover because it has not been injured.[31]  Liberty argues that because Jotun has no right to recover, and because a subrogated insurer acquires no greater rights than the subrogor, Zurich has no right to recover.[32]  Liberty contends, in the alternative, that if Jotun has not been fully indemnified by Zurich, the only entity that would have a cause of action against Liberty would

_____

[30] Zurich does not present the Court with any other contractual provision that would make Zurich and Liberty solidarily liable to Jotun and allow Zurich to maintain its contractual subrogation or contribution claim.

Zurich cites several cases in support of its contention that "Louisiana law permits one insurer to pursue another for contribution."  Mem. opp'n at 9-11.  It is true that Louisiana law permits contribution; however, the source of a contribution claim is subrogation to the rights of the creditor or the insured.  *Perkins*, 568 So. 2d at 550-51.  Some of the cases cited by Zurich are not helpful because they do not address, but rather assume, that the insurers are solidary obligors and, therefore, entitled to contribution.  *See Am. Home Assurance Co. v. Liberty Mut. Ins. Co.*, 454 F. Supp. 2d 593, 599-600 (E.D. La. 2006); *Milan v. Providence Wash. Ins. Co.*, 227 F. Supp. 251, 255 (D.C. La. 1964).  Other cases are distinguishable because, although a right to contribution is found, the right is based upon the contractual or legal subrogation of that insurer.  *See Vaughn v. Franklin*, 785 So. 2d 79, 89 (La. Ct. App. 2001).

Because the Court finds that Zurich does not have a right to contractual subrogation pursuant to the "other insurance" clauses, the Court need not address whether the "other insurance" clauses only relate to indemnification and not an insurer's duty to defend.  Mem. supp. at 10.

[31] *See* mem. supp. at 8-9.

[32] *Id.*

-13-

be Jotun.[33]  Zurich argues that because Liberty has a duty to defend the DuroSeal lawsuits, Zurich has a right pursuant to Louisiana Civil Code article 1829(3) to recover the defense costs it paid for Liberty.[34]

If the "other insurance" provisions are not applicable,[35] only one of the primary insurers, either Zurich or Liberty, would be liable for Jotun's defense costs.  In this situation, Zurich may have a claim for legal subrogation.  Article 1829(3) states that subrogation "takes place by operation of law . . . [i]n favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment."  La. Civ. Code Ann. art. 1829(3) (2008).[36]  "Due to the exceptional nature of subrogation by operation of law, the right is strictly construed."  *Martin v. La. Farm Bureau Cas. Ins. Co.*, 638 So. 2d 1067, 1068 (La. 1994).

Pursuant to article 1829(3), "the initial inquiry is whether the obligor is bound 'with . . . or for others,' and in order for an obligor to be bound, the obligation must be solidary and

---

[33] *Id.* at 9.

[34] Mem. opp'n at 13-15.

[35] *See supra* footnote 27.

[36] Article 1829 in its entirety states:
> Subrogation takes place by operation of law:
> (1) In favor of an obligee who pays another obligee whose right is preferred to his because of a privilege, pledge, mortgage, or security interest;
> (2) In favor of a purchaser of movable or immovable property who uses the purchase money to pay creditors holding any privilege, pledge, mortgage, or security interest on the property;
> (3) In favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment;
> (4) In favor of a successor who pays estate debts with his own funds; and
> (5) In the other cases provided by law.

Zurich only argues that its cause of action arises pursuant to subsection (3) because Zurich has paid Jotun's defense costs, some or all of which Zurich argues Liberty owes.  Mem. opp'n at 13-15.

indivisible." *A. Copeland Enters.*, 657 So. 2d at 1297.  "An obligation is solidary among debtors when they are obliged to the same thing, so that either may be compelled to perform the whole obligation, and payment by one exonerates the other."  *Martin*, 638 So. 2d at 1069.

If the "other insurance" provision is inapplicable, then only Zurich or Liberty would be liable for Jotun's defense costs.  In this situation, payment by one of the insurers of Jotun's defense costs would extinguish the debt and the other insurer would not be liable to Jotun for the defense costs.  Liberty and Zurich would, therefore, be solidarily liable and, if one of the insurers extinguished the debt, *i.e.*, paid the defense costs of Jotun, that insurer would have a right of subrogation against the other insurer.  *See Great Sw.*, 557 So. 2d at 969 ("In general, the solidary obligor who extinguishes the debt is entitled to a right of contribution against his codebtors, but must divide his action so that he can demand from each one of them no more than his virile portion."); *Anthony v. New Orleans Pub. Serv., Inc.*, 480 So. 2d 440, 442 (La. Ct. App. 1985).[37]

Neither Zurich nor Liberty argues in this motion for partial summary judgment whether the "other insurance" clauses are applicable, in which case both insurers would be liable pro rata, or whether the clauses are inapplicable, in which case one insurer is liable to defend Jotun entirely, giving Zurich the right to bring a legal subrogation claim.  Therefore, a genuine issue of

---

[37] The cases cited by Liberty do not support the broad proposition that if Jotun has been fully indemnified, Zurich cannot recover.  Nor do any of the cases cited apply Louisiana law.  Furthermore, Louisiana law specifically provides that legal subrogation does occur "in favor of an obligor who pays a debt that he owes with others or for others."  *See Dumas v. Angus Chem. Co.*, 742 So. 2d 655, 667 (La. Ct. App. 1999) (*citing* La. Civil Code Ann. art. 1829(3)).

The cases cited by Liberty also do not support its argument that only Jotun has a right to recover against Liberty if Jotun has not been fully indemnified.  Rather, Louisiana law provides that a subrogee can judicially enforce its rights when the subrogation is partial.  La. Code Civil Proc. Ann. art. 697 (1999) ("An incorporeal right to which a person has been subrogated, either conventionally or by effect of law, shall be enforced judicially by:  (1) The subrogor and the subrogee, when the subrogation is partial; or (2) The subrogee, when the entire right is subrogated."); *Sutton v. Lambert*, 657 So. 2d 697, 707 (La. Ct. App. 1995) ("Where subrogation is proven, the plaintiff may recover only his remaining interest in the partially subrogated claim.").

material fact, *i.e.*, whether the "other insurance" clauses are applicable, exists, precluding summary judgment on Zurich's legal subrogation claims.

C.     *Motion To Dismiss Claims Regarding Five DuroSeal Lawsuits*

Liberty argues, in the alternative, that the Court should dismiss Zurich's counterclaim with respect to the five DuroSeal lawsuits that were not the subject of Liberty's original complaint, *i.e.*, all claims regarding lawsuits other than *Waxler and Puettmann*.[38]  Liberty argues that the Court should dismiss the claims because allowing Zurich to create a new lawsuit with unique factual issues and extensive discovery does not effect the purpose of Federal Rule Civil Procedure 24.[39]  Zurich responds that the Court should deny Liberty's motion because:  (1) Liberty waived its right to object to Zurich's intervention, (2) Zurich is required to assert all of its claims in the counterclaim, and (3) discovery has already proceeded in the five other DuroSeal lawsuits.[40]

Liberty had no objection to Zurich's motion to intervene.[41]  *See Harker v. Troutman (In re Troutman Enters., Inc.*), 286 F.3d 359, 363 (6th Cir. 2002) ("Intervention is a procedural hurdle, rather than a jurisdictional requirement, and as such, can be waived.  The Trustee not

---

[38] Mem. supp. at 12-15.  Liberty's motion is entitled "Liberty Mutual's motion for partial summary judgment dismissing Zurich's counterclaim or, in the alternative, to strike Zurich's counterclaim."  R. Doc. No. 41.  However, the substance of Liberty's motion makes no reference to striking the counterclaim pursuant to Federal Rule of Civil Procedure 12(f), which governs striking a pleading, but rather only references Rule 24, which governs interventions.  Zurich argues that, despite the fact that Liberty did not argue it, Liberty's motion to strike is untimely because Rule 12(f) requires a party to move to strike within twenty days of being served with the pleading.  Because the Court decides that Liberty waived its right to challenge Zurich's intervention, the Court need not reach this issue.

[39] Mem. supp. at 13-14.

[40] Mem. opp'n at 15-19.

[41] Mot. to intervene, Rule 7.6 certificate.

-16-

only failed to lodge a timely intervention objection, he affirmatively consented to the . . . intervention application . . . .  Therefore, we conclude that the Trustee waived his objection."). Furthermore, Zurich's counterclaim clearly seeks related relief with respect to all of the DuroSeal cases and, even if Zurich's counterclaim would be defined as permissive, a finding this Court need not make, the Court would permit the same to go forward, there being no known jurisdictional impediment to the same.[42]

Liberty's answer to the counterclaim did not argue the objection now argued by Liberty more than six months after the filing of the counterclaim.[43]  Trial is scheduled to commence on April 21, 2008.  Because Liberty waived any objection, Liberty's motion to dismiss Zurich's claims regarding all DuroSeal lawsuits, except for *Waxler* and *Puettmann*, is denied.

Accordingly,

**IT IS ORDERED** that the motion for partial summary judgment filed by plaintiff, Liberty Mutual Insurance Company,[44] to dismiss the counterclaim of intervenor, Zurich American Insurance Company, is **GRANTED IN PART AND DENIED IN PART**.

Zurich's claims against Liberty for equitable and contractual contribution and subrogation are **DISMISSED WITH PREJUDICE**.  Liberty's summary judgment motion to dismiss Zurich's declaratory judgment claim is **DENIED**.  Liberty's summary judgment motion to dismiss Zurich's legal contribution and subrogation claims is **DENIED**.  Liberty's motion to

---

[42] Intervenor counterclaim ¶ 6.

[43] R. Doc. No. 29, Liberty's answer to Zurich's counterclaim.

[44] R. Doc. No. 41.

dismiss Zurich's counterclaim with respect to certain lawsuits[45] is **DENIED**.

New Orleans, Louisiana, March 24, 2008.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[45] *Id.*