**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LIBERTY MUTUAL INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **No. 07-3114** |
| **JOTUN PAINTS, INC.,** *et al.* | **SECTION:  I/5** |

## ORDER AND REASONS

Before the Court are three motions for summary judgment and a motion for a partial stay or to dismiss, all of which the Court will consider together.  First, is a motion for summary judgment on the counterclaim filed on behalf of intervenor, Zurich American Insurance Company ("Zurich"), against plaintiff, Liberty Mutual Insurance Company ("Liberty").[1]  Second, is a motion filed by defendant, Jotun Paints, Inc., and Jotun, Inc., (collectively, "Jotun") for partial summary judgment on its counterclaim.[2]  Third, is a motion for summary judgment filed on behalf of Liberty with respect to the counterclaims of Jotun and Zurich.[3]  Finally, there is a motion filed by Jotun for partial stay or, in the alternative, a motion to dismiss without prejudice

---

[1] R. Doc. No. 62.

[2] R. Doc. No. 65.

[3] R. Doc. No. 70.

the claims regarding Liberty's duty to indemnify.[4]

For the following reasons, Zurich's motion for summary judgment on its counterclaim is **GRANTED IN PART AND DENIED IN PART**. Jotun's motion for summary judgment on its counterclaim is **GRANTED IN PART AND DENIED IN PART**. Liberty's motion for summary judgment on the counterclaims of Jotun and Zurich is **GRANTED IN PART AND DENIED IN PART**. Jotun's motion for partial stay or, in the alternative, to dismiss is **DENIED**.

## *BACKGROUND*

Liberty insured Jotun pursuant to four successive primary commercial general liability ("CGL") policies, (collectively, "Liberty policies") in effect from January 1, 2002, to January 1, 2006.[5] The Liberty policies provide that Liberty has an obligation to defend Jotun in certain lawsuits against Jotun.[6] Several lawsuits were brought against Jotun for damages resulting from

---

[4] R. Doc. No. 103.

[5] R. Doc. No. 41, Liberty's first mot. summ. j. on Zurich's countercl., ex. A, Liberty policies.

[6] Liberty policies § I(A)(1)(a), (b). Those sections provide, in pertinent part:
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
   b. This insurance applies to "bodily injury" and "property damage" only if:
        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
        (2) The "bodily injury" or "property damage" occurs during the policy period.
*Id.* Pursuant to the Liberty policies, property damage is defined as:
        a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

-2-

the application of DuroSeal to barges, allegedly causing an acceleration of the corrosive process;

DuroSeal is a coating product Jotun allegedly developed, marketed, recommended, and sold.[7]

The DuroSeal lawsuits include the following:  (1) *Waxler Transportation Co. v. Trininty Marine*

*Products, Inc.*, No. 49-741; (2) *Puettmann v. Trinity Marine Products, Inc.*, No. 54-087; (3)

*Marquette Transportation Co. v. Trinity Marine Products, Inc.*, No. 49-605; (4) *LeBeouf Bros.*

*Towing Co. v. Trinity Marine Products, Inc.*, No. 50-085; (5) *J. Russell Flowers, Inc. v. Trinity*

*Marine Products, Inc.*, No. 4:02-CV-245; (6) *Florida Marine Transporters, Inc. v. Trinity*

*Marine Products, Inc.*, No. 49-819; and (7) *ACF Acceptance Barge I, LLC v. Trinity Marine*

*Products, Inc.*, No. 49-320.[8]

On June 4, 2007, Liberty filed its complaint in this Court seeking declaratory relief

pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 (2006).[9]  Liberty is seeking a

declaration that it has no duty to defend or indemnify Jotun in *Waxler* and *Puettmann*, two of the

---

b. Loss of use of tangible property that is not physically injured.  All such
loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
*Id.* § V(15).  "Occurrence" is defined as "an accident, including continuous or repeated exposure to
substantially the same general harmful conditions."  *Id.* § V(12).

[7] R. Doc. No. 62-24, Zurich's mot. summ. j., ex. 17, *Waxler* pet. ¶¶ 6-7, 21, 32-33; R. Doc. No. 62-25,
Zurich's mot. summ. j., ex. 18, *Waxler* am. pet. ¶¶ 6-7, 27, 37; R. Doc. No. 62-23, Zurich's mot. summ. j., ex. 16,
*Puettmann* pet. ¶¶ 2, 12, 25-26; R. Doc. No. 62-22, Zurich's mot. summ. j., ex. 15, *Marquette* pet. ¶¶ II, XIII,
XXVII-XXX; R. Doc. No. 62-21, Zurich's mot. summ. j., ex. 14, *LeBeouf* pet. ¶¶ I, XVII, XXXI; R. Doc. No. 62-
19, Zurich's mot. summ. j., ex. 12, *Flowers* compl. ¶¶ 4, 20-22; R. Doc. No. 62-20, Zurich's mot. summ. j., ex. 13,
*Flowers* am. compl. ¶¶ 4, 18, 42-44; R. Doc. No. 62-15, Zurich's mot. summ. j., ex. 8, *Fla. Marine* pet. ¶¶ I, X, XVI,
XXVIII, XXXIII; R. Doc. No. 62-13, Zurich's mot. summ. j., ex. 6, *ACF* pet. ¶¶ 1, 14, 16, 30-31.
        The *LeBeouf* petition and the *Flowers* complaint and amended complaint do not make Jotun, Inc., a
defendant in the lawsuits; rather, only Jotun Paints, Inc., is named.  *LeBeouf* pet. ¶ I; *Flowers* compl. ¶ 4; *Flowers*
am. compl. ¶ 4.  Further, the *LeBeouf* petition does not relate to DuroSeal, but a similar product that is also
manufactured by Jotun.  *LeBeouf* pet.

[8] *Waxler* pet.; *Waxler* am. pet.; *Puettmann* pet.; *Marquette* pet.; *LeBeouf* pet.; *Flowers* compl.; *Flowers* am.
compl.; *Fla. Marine* pet.; R. Doc. No. 62-16, Zurich's mot. summ. j., ex. 9, *Fla. Marine* supp. pet.; R. Doc. No. 62-
17, Zurich's mot. summ. j., ex. 10, *Fla. Marine* second supp. pet.; R. Doc. No. 62-18, Zurich's mot. summ. j., ex. 11,
*Fla. Marine* third supp. pet; *ACF* pet.; R. Doc. No. 62-14, Zurich's mot. summ. j., ex. 7, *ACF* supp. pet.

[9] Compl.

lawsuits enumerated above.[10]  Liberty also argues that it is entitled to reimbursement of any defense costs it has incurred in *Waxler*.[11]

On July 17, 2008, Jotun answered Liberty's complaint and asserted a counterclaim.[12] Jotun's counterclaim seeks a declaration, pursuant to 28 U.S.C. § 2201, that Liberty has a duty to defend and indemnify Jotun for its defense costs in *Waxler* and *Puettmann*.[13]  Jotun also asserts a claim for attorney's fees and litigation expenses it incurred in defending itself in *Waxler* and *Puettmann*.[14]  Jotun further alleges that, by denying its duty to defend, Liberty breached the Liberty policies and it is liable as a result of that breach for attorney's fees and costs associated with the instant action, as well as any other compensatory, consequential, and general damages.[15]

On September 5, 2007, Zurich intervened as a defendant in this action, answering Liberty's complaint and asserting a counterclaim.[16]  Zurich also insured Jotun pursuant to primary CGL policies; however, the Zurich policies began on March 29, 1999, and ended on January 1, 2002 (collectively, "Zurich policies").[17]  The Zurich policies provide that it has a duty,

---

[10] *Id.* at 12.  Liberty only seeks a declaration on its duty to defend and indemnify the *Waxler and Puettmann* lawsuits because Jotun never challenged its denial of its duty in the five other DuroSeal lawsuits.  R. Doc. No. 41-6, Liberty's first mot. summ. j. on Zurich's countercl., ex. C, decl. of Marcia Rowell ¶ 4.

[11] Compl. ¶¶ 37-39.

[12] R. Doc. No. 11, Jotun's answer and countercl.

[13] Countercl. ¶ 5.

[14] *Id.* ¶ 11.

[15] *Id.*

[16] R. Doc. No. 26, Intervenor answer and countercl.  Zurich's motion to intervene was not opposed.  R. Doc. No. 24-3, mot. to intervene, ex., Rule 7.6 certificate.

[17] Liberty's first mot. summ. j. on Zurich's countercl., ex. B, Zurich policies.

under certain circumstances, to defend Jotun.[18]  Zurich has been paying, with a full reservation of rights, for at least a portion of Jotun's costs of defense in all seven DuroSeal lawsuits.[19]

Zurich's counterclaim seeks a declaration, pursuant to the Declaratory Judgment Act, that Liberty has an obligation to defend each of the seven DuroSeal lawsuits listed above.[20]  Zurich further asserts legal contribution and subrogation claims; Zurich argues that, pursuant to these legal theories, it is entitled to recover all or a portion of defense costs it has paid in defending

---

[18] Zurich policies § I(A)(1)(a), (b).  Those sections provide, in pertinent part:
> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
> b.  This insurance applies to "bodily injury" and "property damage" only if:
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>> (2) The "bodily injury" or "property damage" occurs during the policy period.

*Id.*  Pursuant to the Zurich policies, property damage is defined as:
> a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*Id.* § V(17).  "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *Id.* § V(13).

[19] R. Doc. No. 62-3, Zurich's mot. summ. j., statement of uncontested material facts ¶ 6 [hereinafter "SOF"]; R. Doc. No. 73-3, Liberty's response to Zurich's SOF at 2.

[20] Intervenor countercl. at 11.  In 2004, Liberty denied defense and indemnification to Jotun in *Marquette*, *LeBeouf*, *ACF*, *Florida Marine*, and *Flowers*.  Rowell decl. ¶ 4.
Concerning the *Waxler* lawsuit, on February 24, 2004, Liberty denied defense and indemnification to Jotun.  R. Doc. No. 62-38, Zurich's mot. summ. j., ex. 31, letter from Liberty to Jotun denying defense for *Waxler*.  On June 18, 2005, Jotun renewed its demand for defense.  R. Doc. No. 62-39, Zurich's mot. summ. j., ex. 32, letter from Jotun to Liberty regarding the *Waxler* amended petition.  On January 27, 2006, Liberty accepted its duty to defend Jotun beginning on July 18, 2005, (the date of the letter sent to Liberty by Jotun renewing Jotun's demand) based upon the amended petition in *Waxler*.  R. Doc. No. 62-40, Zurich's mot. summ. j., ex. 33, letter from Liberty to Jotun regarding *Waxler*.  Liberty reserved its right to contest coverage.  *Id.*
Concerning the *Puettmann* lawsuit, on October 25, 2006, Liberty received the *Puettmann* petition and Jotun's demand for defense in the lawsuit.  R. Doc. No. 65-21, Jotun's mot. summ. j., ex. P, letter from Liberty to Jotun denying defense.  On January 19, 2007, Liberty denied defense and indemnification to Jotun in the *Puettmann* action.  *Id.*

Jotun in the DuroSeal lawsuits.[21]

Zurich's motion for summary judgment on its counterclaim seeks a declaration that Liberty has a duty to defend Jotun in each of the seven underlying DuroSeal lawsuits and that Liberty has an obligation to reimburse Zurich for defense costs already paid in those lawsuits.[22] Further, Zurich seeks a declaration ordering Liberty to pay defense costs on a "going-forward" basis.[23]

Jotun's motion for partial summary judgment seeks a declaration that Liberty has a duty to defend it in *Waxler* and *Puettmann*.[24] Jotun also seeks reimbursement for attorney's fees and litigation expenses incurred in *Waxler* and *Puettmann* and for attorney's fees and costs in the present action.[25]

Liberty's motion for summary judgment requests that the Court dismiss Jotun's and Zurich's counterclaims and declare that it does not owe a duty to defend Jotun in any of the DuroSeal lawsuits.[26] Liberty's motion argues, in the alternative and if the Court should find it does have a duty to defend Jotun, that Jotun cannot recover for a wrongful failure to defend and

---

[21] Intervenor countercl. at 11.  The Court previously dismissed Zurich's claims against Liberty for equitable and contractual contribution and subrogation.  R. Doc. No. 108, order of March 24, 2008, at 17.

[22] R. Doc. No. 62-2, Zurich's mem. supp. at 22.

[23] *Id.*

[24] R. Doc. No. 65-2, Jotun's mem. supp. at 15-16.

[25] *Id.* at 16.

[26] R. Doc. No. 70-2, Liberty's mem. supp. at 31.  Liberty argues that it does not have a duty to defend because the DuroSeal lawsuits allege that:  (1) property damage occurred before the effective date of the Liberty policies; (2) Jotun was aware of a substantial probability of liability before the inception of the Liberty policies and, therefore, coverage is excluded pursuant to the loss-in-progress doctrine; (3) Jotun was aware of problems with DuroSeal and, therefore, coverage is excluded pursuant to the "expected or intended injury" exclusion; and (4) damage was caused by contact with bacteria, precluding coverage pursuant to the "fungi or bacteria" exclusion.  *Id.*

-6-

that Jotun cannot recover attorney's fees or costs in connection with its pursuit of coverage.[27]

Jotun's motion to stay or to dismiss without prejudice seeks to stay, as premature, any determination regarding Liberty's duty to indemnify.[28]  Jotun contends that a determination as to Liberty's duty to indemnify is not ripe for determination until after *Waxler* and *Puettmann* are reduced to judgment.[29]

## LAW AND ANALYSIS

### I.      Standards of Law

#### A.      *Summary Judgment Standard*

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c).[30]  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986).  The party seeking summary judgment need not produce evidence negating the existence

---

[27] *Id.*

[28] R. Doc. No. 103-2, Jotun's mem. supp. mot. dismiss at 1.

[29] *Id.* at 3.

[30] The *Federal Rules of Civil Procedure*, including Rule 56, were amended on December 1, 2007, in order to make the rules "more easily understood and to make style and terminology consistent throughout."  Fed. R. Civ. P. 56 advisory committee's note (2007 Amendment).  The changes "are intended to be stylistic only," rather than substantive.  *Id.*

of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

B.      *Duty To Defend*

Pursuant to Louisiana law,[31] an insurer's duty to defend an insured is generally broader

---

[31] Because the Court's subject matter jurisdiction in this case is premised upon diversity of citizenship, state law applies to the substantive issues before the Court. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (*citing Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188, 1194 (1938)). "In determining which state's substantive law controls, the court applies the choice-of-law rules of the forum state." *Id.*

than its duty to indemnify.  *Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 290 (5th Cir. 2001) (*citing*

*Yount v. Maisano*, 627 So. 2d 148, 153 (La. 1993)).  "The issue of whether a liability insurer has

the duty to defend a civil action against its insured is determined by application of the 'eight-

corners rule,' under which an insurer must look to the 'four corners' of the plaintiff's petition

and the 'four corners' of its policy to determine whether it owes that duty."  *Henly v. Phillips*

*Abita Lumber Co.*, 971 So. 2d 1104, 1109 (La. Ct. App. 2007); *see Lamar Adver. Co. v. Cont'l*

*Cas. Co.*, 396 F.3d 654, 660 (5th Cir. 2005).  Extraneous evidence should not be considered.

*Selective Ins. Co. of Se. v. J.B. Mouton & Sons, Inc.*, 954 F.2d 1075, 1078 (5th Cir. 1992);

*Houghtaling v. Richardson*, 800 So. 2d 1012, 1014 (La. Ct. App. 2001).

"If any facts alleged in the petition support a claim for which coverage is not

unambiguously excluded, the insurer must defend the insured."  *United Fire & Cas. Co. v.*

*Hixson Bros.*, 453 F.3d 283, 285 (5th Cir. 2006); *see Suire v. Lafayette City-Parish Consol.*

*Gov't*, 907 So. 2d 37, 52 (La. 2005).  The petition should be interpreted liberally when making

such a determination.  *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 677 (5th

Cir. 2001) (*citing Am. Home Assurance Co. v. Czarniecki*, 230 So. 2d 253, 259 (1969)).  "Thus, .

. . an insurer's duty to defend arises whenever the pleadings against the insured disclose even a

possibility of liability under the policy."  *Alwell v. Meadowcrest Hosp., Inc.*, 971 So. 2d 411, 414

(5th Cir. 2007); *Johnson v. Misirci*, 955 So. 2d 715, 719 (La. Ct. App. 2007) ("Under this

---

(*quoting Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97, 61 S. Ct. 1021-22, 85 L. Ed. 1477, 1480-81 (1941)).  The Liberty policies were issued in Louisiana.  Compl. ¶ 7.  Because this action involves these insurance policies, Louisiana substantive law governs.  *See Am. Int'l Specialty Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) ("Louisiana choice of law rules dictate[] that in this action involving the interpretation of insurance policies issued in Louisiana, Louisiana substantive law governs our decision."); *Ins. Co. of N. Am. v. W. of Eng. Shipowners Mut. Ins. Ass'n*, 890 F. Supp. 1302, 1306 (E.D. La. 1995) (Vance, J.) ("Louisiana law is the obviously applicable state law since the [insurance] policies were provided to a Louisiana insured in the State of Louisiana.").

analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy.").

If a complaint contains even one allegation that is not unambiguously excluded from coverage under the policy, "'the insurer has a duty to accept defense of the entire lawsuit, even though other claims in the complaint fall outside of the policy's coverage.'" *Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 523 (5th Cir. 2005) (*quoting Montgomery Elevator Co. v. Bldg. Eng'g Servs. Co.*, 730 F.2d 377, 382 (5th Cir. 1984)); *see Mossy Motors, Inc. v. Cameras Am.*, 898 So. 2d 602, 606 (La. Ct. App. 2005).  "We look only to the *factual* allegations in the complaint, however; 'statements of conclusions in the complaint that are unsupported by factual allegations will not trigger a duty to defend.'"  *Coleman*, 418 F.3d at 523 (*quoting Jensen v. Snellings*, 841 F.2d 600, 612 (5th Cir. 1988)).

## II.    Discussion

### A.    *Occurrence and Property Damage Under Liberty's Policies*

Zurich contends that, "because each *DuroSeal* petition alleges that property damage either took place or may have taken place in a barge, or that the alleged damage to one or more barges manifested or may have manifested, during a Liberty Mutual policy period," Liberty has a duty to defend Jotun in each of the seven lawsuits.[32]  The Liberty policies provide that, where coverage exists, it will defend Jotun with respect to property damage claims asserted against

---

[32] Zurich's mem. supp. at 6-7 & n.2.

Jotun.[33]  The Liberty policies specify that the property damage, in order to be covered under the insurance, must have been caused by an "occurrence" and that the damage must have occurred during the policy period.[34]  An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[35]  Liberty argues that the time that the property damage manifested itself on the first of each of plaintiff's barges is the pertinent time for determining whether the property damage occurred during a Liberty policy period.[36]

### 1.  What Constitutes One Occurrence

In *Lombard v. Sewerage & Water Board of New Orleans*, the Louisiana Supreme Court held that, in cases where different parties are damaged by a series of events, the damage to each party is a separate "occurrence" for purposes of an insurance contract.  284 So. 2d 905, 915-16 (La. 1973);[37] *see Tesvich v. 3-A's Towing Co.*, 547 So. 2d 1106, 1111 (La. Ct. App. 1989) ("[W]e

---

[33] Liberty policies § I(A)(1)(a).

[34] *Id.* § V(15).

[35] *Id.* § V(12).

[36] R. Doc. No. 72-2, Liberty's mem. opp'n to Zurich's mot. summ. j. at 6.

[37] In *Lombard*, 119 plaintiffs owning residential property brought lawsuits alleging that their damages were due to the lengthy construction and installation of an underground concrete drainage canal.  284 So. 2d at 907-11.  The Louisiana Supreme Court stated:
> As to each of these plaintiffs, the cumulated activities causing damage should be considered as one occurrence, though the circumstances causing damage consist of a continuous or repeated exposure to conditions resulting in damage arising out of such exposure.  Thus, when the separate property of each plaintiff was damaged by a series of events, one occurrence was involved insofar as each property owner was concerned.

*Id.* at 915-16.  The court made its finding despite the fact that certain plaintiffs had more than one building damaged as a result of the one occurrence.  *Id.* at 910.

have concluded on the basis of *Lombard* that the claim of each plaintiff with respect to his or her

leases constitutes a separate occurrence." (citation omitted));[38] *see also Reynolds v. Transcon.*

*Ins. Co.*, Civ. A. Nos. 94-1367, 94-1432, 1995 WL 16795, at *5-6 (E.D. La. Jan. 17, 1995)

(Duval, J.) (discussing and applying *Lombard, Tesvich*, and *Soc'y of the Roman Catholic Church*

*v. Interstate Fire & Cas. Co.*, 26 F.3d 1359 (5th Cir. 1994)).

The property damage in the DuroSeal petitions allegedly arose because of several

negligent and fraudulent acts on the part of Jotun and others.[39]  Each of these acts does not

constitute a separate occurrence, but rather the acts combined constitute one occurrence for each

party injured, *i.e.*, a separate occurrence for each plaintiff.

### 2. *The Date on Which Property Damage Occurred*

The Liberty policies do not require that both the occurrence and the property damage fall

within the coverage period of the insurance contract; rather, only that the property damage itself

---

[38] In *Tesvich*, the plaintiffs, four oyster fisherman, alleged that two tugboats disrupted several acres of oyster beds leased to plaintiffs under several different leases.  547 So. 2d at 1108-09.  The court held that there were only four occurrences, one occurrence per plaintiff, and not eight as the trial court had found.  *Id.* at 1111.

[39] *See Waxler* pet. ¶ 65 (alleging that Jotun was negligent for, inter alia, failing to address the link between DuroSeal and MIC, for marketing, recommending, and selling a wax-based coating that accelerated corrosion, and for failing to warn DuroSeal purchasers); *Waxler* am. pet. ¶ 75 (same); *Puettmann* pet. ¶¶ 37-38 (alleging, inter alia, that Jotun failed to recommend that a different coating be used and failed to properly and adequately manufacture, design, test, market, select, and utilize a proper coating product); *Marquette* pet. ¶¶ LII-LIV (alleging, inter alia, that Jotun failed to adequately design, research, manufacture, test, inspect, warn, and distribute DuroSeal); *LeBeouf* pet. ¶¶ XXXIX-XL (alleging, inter alia, that Jotun negligently and defectively designed, researched, manufactured, tested, inspected, warranted, and distributed the coating); *Flowers* compl. ¶¶ 88, 89 (alleging, inter alia, that Jotun failed to adequately test or research DuroSeal and made several representations in reckless disregard of the truth); *Flowers* am. compl. counts VIII-XII (alleging the same as the original complaint and further that Jotun was negligent in manufacturing and in failing to heed/investigate warnings); *Fla. Marine* pet. ¶ LII (alleging, inter alia, that Jotun failed to properly and adequately manufacture, design, test, select, and utilize an appropriate coating); *ACF* pet. ¶ 61 (alleging, inter alia, that Jotun negligently and defectively designed, researched, manufactured, tested, inspected, warned against, and distributed DuroSeal).

must occur within the coverage period.[40]  *See, e.g.*, *Oxner v. Montgomery*, 794 So. 2d 86, 92-93

(La. Ct. App. 2001) (finding that coverage under an insurance policy is triggered when the

damage manifests itself and not when the negligent act that caused the damage occurred).  In

considering when the property damage occurred, Louisiana courts have held, in similar cases,

that a manifestation theory is applicable.[41]  *See, e.g.*, *id.* at 93 (holding that property damage

occurred when homeowners noticed damage, not when house was improperly constructed);

*Audubon Trace Condo. Ass'n, Inc. v. Brignac-Derbes, Inc.*, 924 So. 2d 1131, 1133 (La. Ct. App.

2006) (holding that property damage occurred when condominium owners received architect's

report detailing damage, not during the four years of construction of the condos); *Korossy v.

Sunrise Homes, Inc.*, 653 So. 2d 1215, 1225-26 (La. Ct. App. 1995) ("The differential settlement

resulted from each home's continuous or repeated exposure to the injurious conditions over a

course of time, but the effects of the excessive settlement did not become 'damage' until it was

discovered by the homeowners."); *see also, e.g.*, *New Orleans Assets, L.L.C. v. Travelers Prop.

Cas. Co.*, Nos. Civ.A. 01-2171, Civ.A. 02-974, 2002 WL 32121257, at *2-3 (E.D. La. Sept. 12,

2002) (Feldman, J.) (holding that property damage occurred when mold contamination first

manifested).

   "Under the manifestation theory, insurance coverage applies under a policy if the

property damage manifests during the policy period, regardless of when the act from which it

---

[40] Liberty policies § I(A)(1)(b).

[41] There are four main theories that have been used by courts in determining when property damage
occurred for purposes of determining coverage issues, one of which is the manifestation theory.  *See Guaranty Nat'l
Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239, 244-47 (5th Cir. 2000).  The Louisiana Supreme Court has not ruled on
the appropriate trigger theory in cases involving ongoing property damage under a policy such as the one at issue
here.

resulted occurred." *Audubon Trace*, 924 So. 2d at 1133; *Oxner*, 794 So. 2d at 93 ("Under the

manifestation theory, property damage would be considered to have occurred when it became

manifest, regardless of when the act from which it resulted occurred.").  Applying a

manifestation theory to the DuroSeal lawsuits, property damage occurred when the damage to

the barges, caused by the application of DuroSeal, manifested.


B.      *Fortuity or Loss-In-Progress Doctrine*

        Liberty also argues that the fortuity or loss-in-progress doctrine bars coverage in all of

the DuroSeal cases.[42]  Jotun and Zurich contend that Louisiana does not recognize the loss-in-

progress doctrine and, even if the doctrine were applicable, that Liberty cannot demonstrate that

the doctrine bars coverage under its policies.[43]

        The United States Court of Appeals for the Fifth Circuit described the fortuity doctrine:

> The fortuity doctrine relieves insurers from covering certain
> behaviors that the insured undertook prior to purchasing the policy.
> "Because the purpose of insurance is to protect insureds against
> unknown, or fortuitous, risks, fortuity is an inherent requirement of
> all risk insurance policies."  Combining the principles of "known
> loss" and "loss in progress," the fortuity doctrine holds that
> "[i]nsurance coverage is precluded where the insured is or *should be
> aware* of an ongoing progressive or known loss at the time the policy
> is purchased."

*RLI Ins. Co. v. Maxxon Sw. Inc.*, 108 Fed. App'x 194, 198 (5th Cir. 2004) (citations omitted)

(applying Texas law).

        The Louisiana Court of Appeals for the Second Circuit recently examined Louisiana

---

[42] Liberty's mem. opp'n to Zurich's mot. at 8-10; Liberty's mem. supp. at 17-19.

[43] R. Doc. No. 75, Jotun's mem. opp'n to Liberty's mot. at 8-13; R. Doc. No. 87, Zurich's reply in supp. at 8-9; R. Doc. No. 74, Zurich's mem. opp'n to Liberty's mot. at 5-8.

jurisprudence and found that, "[w]hile Louisiana does not apply the 'known loss' doctrine *per se*, the holding in each of the respective (aforementioned) cases is not meant to stand for the proposition that an actual, known loss predating an insurance policy is somehow covered." *Brignac v. City of Monroe*, 936 So. 2d 272, 277-78 (La. Ct. App. 2006) (discussing *Korossy*, 653 So. 2d 1215 and *Estate of Patout v. City of New Iberia*, 849 So. 2d 535 (La. Ct. App. 2002)). The court in *Brignac* stated that

> no insurance company would have issued a policy covering an accident which had occurred prior to [the insured] applying for insurance.   Such a loss is uninsurable.   Anything otherwise is contrary to the fundamentals of Louisiana law and, more so, to the fundamentals of sound business practice or even common sense.

*Id.* at 278; *see Shelton v. Comm'l Union Assurance Co.*, 396 So. 2d 1379, 1382 (La. Ct. App. 1981) ("'It would seem to be too clear to admit of argument that an insurance agent has no authority to contract for liability on behalf of the principal by incurring liability for a loss which has already been incurred.'" (*quoting B.T.U. Insulators, Inc. v. Md. Cas. Co.*, 175 So. 2d 899, 902 (La. Ct. App. 1965)); *Broome v. State Farm Mut. Auto Ins. Co.*, 152 So. 2d 827, 829 (La. Ct. App. 1963) ("An insured, when contracting for the insurance, necessarily represents that the object insured is in existence and has not already suffered the damage insured against.").

There do not, however, seem to be any Louisiana cases that suggest that an insurer is relieved from covering losses of which the insured *should have been aware*; rather, the cases merely state that if an insured *was aware*, the insurer is not liable for the losses.[44]  *See, e.g.*,

---

[44] Liberty argues that the doctrine applies not only to situations where the insured actually knew of the loss, but also in cases where the losses are "so probable or imminent" that the losses are uninsurable.  Liberty's mem. opp'n to Zurich's mot. at 8.  The cases cited by Liberty are unavailing.  Neither of the two Fifth Circuit cases Liberty cites apply Louisiana law.  *See RLI*, 108 Fed. App'x 194 (applying Texas law); *Summers v. Harris*, 573 F.2d 869 (5th Cir. 1978) (discussing the loss-in-progress doctrine with respect to a flood insurance policy issued pursuant to the National Flood Insurance Act).

*Brignac*, 936 So. 2d at 278; *New Orleans Assets*, 2002 WL 32121257, at *3 ("The manifestation theory incorporates the 'loss in progress' rule that an insurer cannot insure against loss that is known or apparent to the insured.  Thus, the insurer on the risk at the time of discovered damage is liable for the entire loss, even if the property damage progresses after the policy expires.").  Therefore, if Jotun was actually aware, as opposed to should have been aware, that DuroSeal was a defective coating before the effective date of the Liberty policies, Liberty's insurance policies will not cover that damage.


C.     *The "Expected or Intended Injury" Exclusion*

Liberty also claims that it has no duty to defend the DuroSeal lawsuits because of the "expected or intended injury" exclusion, which provides an exclusion for property damage that, from the standpoint of the insured, was expected or intended.[45]  Jotun argues that the DuroSeal lawsuits do not allege that Jotun intended for the damage to occur and, therefore, this exclusion does not apply.[46]  Zurich argues that the exclusion does not apply because Liberty cannot prove that the petitions allege that all of the damage was caused by Jotun's intended acts.[47]

"The purpose of the intentional injury exclusion is to restrict liability insurance coverage by denying coverage to an insured in circumstances where the insured acts deliberately and intends or expects . . . injury to another.  The exclusion is 'designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will "pay the piper"

---

[45] Liberty policies § I(A)(2)(a); R. Doc. No. 72, Liberty's mem. opp'n to Jotun's mot. at 4-5.

[46] R. Doc. No. 89, Jotun's reply in supp. at 3-4.

[47] Zurich's reply in supp. at 9-10.

for the damages.'"  *Breland v. Schilling*, 550 So. 2d 609, 610 (La. 1989) (*quoting Transam. Ins. Group v. Meere*, 694 P.2d 181, 186 (Ariz. 1984)).  The Louisiana Supreme Court noted that the phrase in the exclusion, "from the standpoint of the insured," leads to an inquiry into the subjective intention of the insured to determine which damage falls within and which falls outside the scope of the policy coverage.  *Id.* at 611.

"'The subjective intent of the insured, as well as his reasonable expectations as to the scope of his insurance coverage, will determine whether an act is intentional.  An act is intended if the perpetrator desires the results of his action or he believes that the results are substantially certain to occur.'"  *Pender v. Elmore*, 855 So. 2d 930, 936 (La. Ct. App. 2003) (*quoting Yount*, 627 So. 2d at 152).  If an insured knows and expects that damage will occur, but nevertheless acts, the expected incident is excluded under an insurance policy's "expected or intended injury" exclusion.  *Cole-Gill v. Moore*, 862 So. 2d 1197, 1205-06 (La. Ct. App. 2003).

Each of the DuroSeal petitions contains negligence claims against Jotun.[48]  "By mere definition, negligence does not involve intent."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 353 (5th Cir. 2005).  Because the exclusion only related to intended and expected behavior, a negligence claim cannot be excluded pursuant to the "expected or intended injury" exclusion.  A petition need only state one claim that is not unambiguously excluded.  *Dennis v. Finish Line, Inc.*, 636 So. 2d 944, 947 (La. Ct. App. 1994) ("Once a petition states one claim within the policy's coverage, the insurer has a duty to accept defense of the entire lawsuit, even though other claims in the petition fall outside the policy's coverage.").  Because the negligence claims in each petition cannot be excluded pursuant to this exclusion, Liberty cannot deny coverage in

---

[48] *See* sources cited *supra* note 37.

any of the DuroSeal lawsuits on this basis.

### D.    The "Fungi or Bacteria" Exclusion

Liberty's final argument with respect to its lack of a duty to defend Jotun is that coverage is excluded pursuant to the "fungi or bacteria" exclusion present in the Liberty policies beginning on January 1, 2003.[49]  Jotun argues that the exclusion does not apply:  (1) under the 2002 Liberty policy, because such exclusion was not contained in that policy; (2) because the intent of the exclusion is to limit liability for toxic buildings and not vessels; and (3) because the exclusion is inapplicable to products liability cases.[50]  Zurich likewise argues that the exclusion does not apply:  (1) to property damage that occurred prior to January 1, 2003; (2) because the petitions allege that the plaintiffs suffered damage to barges, rather than a "building or structure"; and (3) because the barges suffered damage not solely related to bacteria.[51]

The "fungi or bacteria" exclusion provides in pertinent part:

> This insurance does not apply to:
> Fungi or Bacteria
> a.       "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such

---

[49] Liberty's mem. supp. at 24-25.

[50] Jotun's mem. supp. at 11-13.  Jotun also denies that the "fungi or bacteria" exclusion was a part of Liberty's 2003 policy.  Jotun's mem. supp. at 11 n.5.  As the Court does not find that the exclusion unambiguously excludes coverage, determining which of Liberty's policies contained such exclusion is not necessary at this time.

[51] Zurich's reply in supp. at 10.

> injury or damage.
>
> . . . .
>
> This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good product intended for consumption.[52]

"An insurance policy is a contract between the parties, and should be construed employing the general rules of interpretation of contracts." *Mossy*, 898 So. 2d at 605 (*citing Blackburn v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 784 So. 2d 637, 641 (La. 2001)). "Words in an insurance policy must therefore be given their generally prevailing meaning, unless they have acquired a technical meaning, in which case the technical meaning applies." *Id.* "Ambiguous insurance policy provisions are construed against the insurer and in favor of the insured." *Misirci*, 955 So. 2d at 718.

The plain language of Liberty's "fungi or bacteria" exclusion only applies to buildings or structures, including contents, and not to vessels or barges. "'[A]n ambiguity exists in an insurance policy when the pertinent provision can reasonably be construed in two different ways.'" *Id.* (*quoting McCarthy v. Berman, D.C.*, 668 So. 2d 721, 726 (La. 1996)). Because the policy does not unambiguously preclude recovery for property damage occurring to a barge, this exclusion does not relieve Liberty of its duty to defend.

E.    *DuroSeal Lawsuits*

1. *Allegations Common to Each of the Seven DuroSeal Lawsuits*

The seven DuroSeal lawsuits were brought against numerous defendants, including

---

[52] Liberty's policies, 2004-2006, "fungi or bacteria" exclusion § I(A)(2).

Trinity Marine Products, Inc., and Trinity Industries, Inc., (collectively, "Trinity")[53] and Jotun,[54] for damages due to the application of DuroSeal on various barges; DuroSeal is a coating product Jotun allegedly developed, marketed, recommended, and sold.[55]  As previously mentioned, DuroSeal was allegedly designed to protect marine barges from corrosion; however, DuroSeal instead allegedly caused or accelerated the corrosive process.[56]

The DuroSeal lawsuits allege that DuroSeal provides ideal conditions for Microbiologically Influenced Corrosion ("MIC"), which is corrosion caused by common microscopic bacteria that become active, propagate, and cause chemical reactions.[57]  These chemical reactions allegedly result in severe, localized pitting and corrosion of steel.[58]

### 2.  Waxler Original Petition

On April 7, 2003, a class action petition was filed in Louisiana state court by plaintiff,

---

[53] Trinity is allegedly a corporation engaged primarily in the construction and sale of barges for use in the marine transportation industry.  *Waxler* pet. ¶ 4.

[54] The *LeBeouf* petition and the *Flowers* complaint and amended complaint do not make Jotun, Inc., a defendant in the lawsuits; rather, only Jotun Paints, Inc., is named.  *LeBeouf* pet. ¶ I; *Flowers* compl. ¶ 4; *Flowers* am. compl. ¶ 4.  However, this has no bearing on the Court's analysis.

[55] *Waxler* pet. ¶¶ 4-7, 21, 32-33; *Waxler* am. pet. ¶¶ 4-7, 27, 37; *Puettmann* pet. ¶¶ 2, 12, 25-26; *Marquette* pet. ¶¶ II, XIII, XXVII-XXX; *LeBeouf* pet. ¶¶ I, XVII, XXXI; *Flowers* compl. ¶¶ 2-4, 20-22; *Flowers* am. compl. ¶¶ 2-4, 18, 42-44; *Fla. Marine* pet. ¶¶ I, X, XVI, XXVIII, XXXIII; *ACF* pet. ¶¶ 1, 14, 16, 30-31.  The *LeBeouf* petition does not relate to DuroSeal, but rather a similar product also manufactured by Jotun.  *LeBeouf* pet.  This does not change the Court's analysis.

[56] *See* sources cited *supra* note 55.

[57] *Waxler* pet. ¶¶ 32-33; *Waxler* am. pet. ¶¶ 38-39; *Puettmann* pet. ¶¶ 11, 14-15, 27; *Marquette* pet. ¶¶ XIII, XV-XVI, XXIX, XXX; *LeBeouf* pet. ¶¶ XXI, XXIV-XXVI; *Flowers compl.* ¶¶ 47-49; *Flowers* am. compl. ¶¶ 44-46; *Fla. Marine* pet. ¶¶ X, XII, XVI, XXXVI-XXXVII, XLII-XLIII; *ACF* pet. ¶¶ 14, 16, 34, 38.

[58] *See* sources cited *supra* note 57.  DuroSeal allegedly provides both nutrients and shelter for such bacteria. *See* sources cited *supra* note 57.

Waxler Transportation Company, Inc., ("Waxler") against defendants, Trinity and Jotun.[59]  The *Waxler* lawsuit arises from Jotun's sale of DuroSeal to Trinity, which applied DuroSeal to four barges sold to Waxler.[60]

In addition to the allegations common to the other DuroSeal lawsuits, the petition alleges, specifically, that, in 1997, Trinity began to build barges coated with DuroSeal.[61]  In September, 1999, Waxler and Trinity entered into a series of contracts for the construction and sale of four double-skin tank barges for use in the marine transportation business.[62]  The four barges were coated in DuroSeal and were purchased from Trinity by Waxler in February and August of 2000.[63]

In June, 2001, Waxler allegedly discovered DuroSeal coating failures and excessive rust.[64]  Waxler allegedly notified Trinity of the failures within thirty to sixty days of the discovery and requested that Trinity investigate the cause of the failures and make necessary repairs to the barges.[65]  Since discovering the excessive corrosion, Waxler allegedly inspected and continues to inspect its barges.[66]

Applying the manifestation doctrine to the allegations in the petition, the property

---

[59] *Waxler* pet.  Waxler brought negligence, breach of contract, and breach of implied warranty and redhibition claims against Jotun and Trinity.  *Id.* ¶¶ 59-96.  Waxler further brought a fraud/fraudulent inducement claim against Trinity and a fraud/fraudulent misrepresentation claim against Jotun.  *Id.* ¶¶ 97-118.

[60] *Id.* ¶ 1.

[61] *Id.* ¶ 27.

[62] *Id.* ¶ 45.

[63] *Id.* ¶ 46.

[64] *Id.* ¶ 53.

[65] *Id.* ¶ 54.

[66] *Id.* ¶ 56.

damage occurred in June, 2001, when the damage manifested itself to Waxler as coating failures and excessive rusting.  Liberty's insurance coverage did not begin until January 1, 2002, after the property damage occurred.  Because Liberty's policies require that the property damage occur during the coverage period, Liberty has no duty to defend Jotun in the *Waxler* lawsuit based upon the allegations in the original petition.

### 3.  *Waxler Amended Petition*

An amended class action petition was filed in *Waxler* on October 17, 2003.[67]  The amended petition added, as defendants, International Zinc and Coating Corporation ("International"),[68] Valspar Corporation ("Valspar"),[69] Molecular Architects, Inc., ("Molecular")[70] Polyset Corporation ("Polyset"),[71] and Lee Engineering Supply Company, Inc. ("Lee").[72]  The allegations of the amended petition are, for the most part, the same as those in the original petition, with a few distinctions.  The amended petition alleges that, on June 7, 2002, and August 15, 2002, inspections revealed corrosion consisting of extensive pitting of the steel

---

[67] *Waxler* am. pet.

[68] International is allegedly a company engaged primarily in manufacturing, selling, marketing, designing, and distributing coating products.  *Id.* ¶ 8.  DuroSeal was first marketed and sold by International.  R. Doc. No. 65-3, Jotun's SOF ¶ 2.

[69] Valspar is allegedly a company engaged primarily in manufacturing, selling, designing, and distributing coating products.  *Waxler* am. pet. ¶ 9.  Jotun acquired the right to market and sell DuroSeal from Valspar on or about March 26, 1999.  Jotun's SOF ¶ 1.

[70] Molecular is allegedly a company engaged primarily in designing, constructing, selling, distributing, and marketing coating products.  *Waxler* am. pet. ¶ 10.

[71] Polyset is allegedly a company engaged primarily in marketing and distributing coating products.  *Id.* ¶ 11.

[72] *Id.* ¶ 1.  The amended petition enumerated negligence, breach of contract, breach of express warranty, and breach of implied warranty and redhibition claims against all defendants.  *Id.* ¶¶ 69-116.  Further, a fraud/fraudulent inducement claim was brought against Trinity and a fraud/fraudulent misrepresentation claim was brought against Jotun, International, Valspar, Molecular, Lee, and Polyset.  *Id.* ¶¶117-136.

and blistering of the DuroSeal coating.[73]  The paragraph from the original petition alleging that, in June, 2001, Waxler allegedly discovered DuroSeal coating failures and excessive rust, is not found in the amended petition.[74]

Employing the manifestation doctrine, the property damage occurred on June 7, 2002, when two of the barges were inspected, revealing corrosion damage.  Liberty's insurance coverage began on January 1, 2002, which is before the property damage alleged in the amended petition occurred.  Based upon these allegations, Liberty's duty to defend is not precluded by the argument that the property damage occurred outside of its coverage period.

Liberty argues that, even if the property damage occurred within its coverage period, it has no duty to defend pursuant to the loss-in-progress doctrine because the petition alleges that Jotun had knowledge of the loss (defect) prior to the inception of Liberty's coverage.[75]  Jotun and Zurich argue that the petition does not allege sufficient facts to show Jotun's knowledge.[76]

The petition only alleges that Jotun "knew or should have known" that DuroSeal was a defective product;[77] as discussed above, Louisiana law has not relieved insurers of their duty to

---

[73] *Id.* ¶ 60.

[74] *Waxler* pet. ¶ 53.  Liberty argues that the *Waxler* original and amended petitions should be considered together.  Liberty's mem. supp. at 7-8, 21.  However, an amended pleading that does not expressly retain or abandon the original petition ordinarily supersedes it, unless it is evident that the amended pleading is not a substitute for the original petition.  *See Coleman's Heirs v. Holmes' Heris*, 147 So. 2d 752, 753-54 (La. Ct. App. 1962).  It is not apparent that the amended petition in *Waxler* is not a substitute for the original petition; in fact, the amended petition repeats verbatim many of the allegations of the original petition.

[75] Liberty's mem. supp. at 18-19.

[76] Jotun's mem. opp'n at 8-13; Zurich's reply in supp. at 8-9.

[77] Specifically, the petition states:
> 36.  Defendants knew or should have known that wax-based surface coatings such as Duro-Seal are not effective barriers against corrosion in the void compartments of barges.
> 37.  In fact, Defendants knew or should have known that the application of such coatings actually promotes and accelerates the specific type of corrosion known as MIC.

-23-

defend unless the insured had actual knowledge of the loss prior to the beginning of the insurance coverage.  Therefore, Liberty's duty to defend is not extinguished by the fortuity doctrine.  The pleadings disclose a possibility of liability under the policy.  As Liberty has failed to show that the *Waxler* amended petition unambiguously excludes coverage under the Liberty policies, Liberty has a duty to defend the *Waxler* amended petition.[78]

### 4. *Puettmann Petition*

On September 20, 2006, plaintiff, Scott Puettmann ("Puettmann"), filed a petition for damages in Louisiana state court against defendants, Trinity, Jotun, Lee, Molecular, Valspar, and Polyset.[79]  The *Puettmann* lawsuit arises from Puettmann's purchase from Trinity of three barges for use in the marine transportation industry; each of the three barges was coated with DuroSeal.[80]  Puettmann allegedly contracted for the sale with Trinity in January, 2000, and the barges were placed into service in March, 2000.[81]

Preliminary inspections of Puettmann's barges allegedly revealed the presence of MIC and premature deterioration, particularly in the interior void spaces of the barges.[82]  Puettmann

---

*Waxler* am. pet. ¶¶ 36-37.

[78] Because Liberty had no duty to defend Jotun according to the allegations in the original petition, but Liberty does have a duty to defend based upon the allegations in the amended petition, Liberty's duty to defend Jotun in *Waxler* began on June 18, 2005, the date Liberty received the amended *Waxler* petition and Jotun renewed its demand for defense.  *See* Letter from Jotun to Liberty regarding the *Waxler* amended petition.

[79] *Puettmann* pet.  The *Puettmann* lawsuit asserts claims for breach of contract, negligence, failure to disclose, fraudulent misrepresentation, concealment, breach of express and implied warranties, and redhibition. *Puettmann* pet. ¶¶ 40-42, 44, 46-48.

[80] *Id.* ¶¶ 3, 6, 18.

[81] *Id.* ¶¶ 3-4.

[82] *Id.* ¶ 25.

subsequently had additional inspections performed on his barges that revealed MIC contamination and extensive corrosion.[83]

Utilizing the manifestation doctrine, the property damage occurred sometime after the barges were placed into service in March, 2000, when preliminary inspections revealed the presence of MIC and premature deterioration.  Although the petition does not allege the specific date on which the damage was done, an insurer has a duty to defend as long as sufficient facts are set forth to state a claim for coverage and the petition does not unambiguously exclude coverage.  *See Fed. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 638 So. 2d 1132, 1135 (La. Ct. App. 1994) ("The absence of detailed times, dates, and places in the petition does not defeat our conclusion that the allegations state, at least rudimentarily, a claim which may be covered by the insurance contract.").  The *Puettmann* petition does not unambiguously exclude coverage and Liberty is not relieved from its duty to defend based upon its assertion that the property damage did not occur within its coverage period.

Liberty contends that it also has no duty to defend because of the loss-in-progress doctrine, *i.e.*, because Jotun was aware of DuroSeal problems before Liberty's coverage began.[84] Jotun and Zurich argues that the petition does not contain sufficient allegations to bar coverage under the fortuity doctrine.[85]

Although the petition contains one paragraph alleging that Jotun had actual knowledge of

---

[83] *Id. ¶ 28.*

[84] Liberty's mem. supp. at 17-19.

[85] Jotun's mem. opp'n at 8-13; Zurich's reply mem. at 8-9.

complaints of problems with DuroSeal,[86] as long as the petition contains even one claim that is not unambiguously excluded from coverage, the insurer has a duty to defend.  *See Coleman*, 418 F.3d at 523.  While this actual knowledge allegation may have unambiguously excluded coverage for some of the claims, the Court cannot state that this one paragraph unambiguously excludes coverage for all of the claims against Jotun.[87]  Liberty, therefore, has a duty to defend Jotun in the *Puettmann* lawsuit.

### 5.  Marquette Petition

On March 7, 2003, plaintiffs, Marquette Transportation Company, Inc., ("Marquette") and Iowa Fleeting Services, Inc., ("Iowa") filed a petition in Louisiana state court against defendants, Trinity, Jotun, Lee, Molecular, International, Valspar, and Polyset.[88]  Beginning in

---

[86] The pertinent paragraphs state:

> 15.
>
> Prior to [Puettmann's] involvement in these barges, [Trinity] and the other defendants had actual knowledge of complaints of coating adhesion problems and coating failures and excessive corrosion caused by MIC in similar barges manufactured by Trinity from other customers of Trinity which used Duro-Seal as the coating in its internal void spaces.
>
> 16.
>
> Notwithstanding this information, Trinity and the other defendants recommended Duro-Seal for use in the [Puettmann] barges, even though they knew or should have known, that Duro-Seal was inappropriate for use in these barges and failed to disclose all pertinent information to [Puettmann].

*Puettmann* pet. ¶¶ 15-16.

[87] For example, the petition asserts a claim against Jotun for negligence for failure to properly manufacture, design, test, market, select, and utilize a coating product appropriate for use in interior void compartments.  *Id.* ¶ 38.  The paragraphs regarding actual knowledge state that Jotun had knowledge of other DuroSeal complaints, but state only that Jotun "knew or should have known" that DuroSeal was inappropriate for use in the barges.  *Id.* ¶¶ 15-16.  As noted earlier in this opinion, Louisiana law has not relieved insurers from a duty to defend when an insured "should have known"; rather, the jurisprudence only relieves the duty if the insured had actual knowledge of a prior loss.

[88] *Marquette* pet.  The *Marquette* petition contains claims for fraud, fraudulent inducement and concealment, fraudulent misrepresentation, negligent misrepresentation, bad faith breach of contract, unfair and deceptive trade practices, breach of implied warranty against redhibitory vices and defects and warranties of merchantability and fitness for a particular purpose, and products liability for the characteristics of the defective barges that rendered the barges defective, unfit, and unreasonably dangerous.  *Id.* ¶¶ LXI-LXV.

1998, Marquette allegedly contracted with Trinity to construct eighty-four barges for use in the marine transportation industry; Marquette assigned its rights to forty-four of the barges to Iowa.[89] The barges were constructed and placed into service between February, 1999, and January, 2000.[90]

In April, 2002, Marquette and Iowa began to suspect that the barges may have been affected by MIC and they commissioned the inspection of several of the barges.[91]  The inspections revealed the presence of MIC and premature deterioration, particularly in the interior void spaces of the barges.[92]  Subsequently, Marquette and Iowa had additional inspections performed that revealed MIC contamination and extensive corrosion in all or the vast majority of the barges surveyed.[93]

According to these allegations, the property damage occurred, *i.e.*, manifested, during inspections sometime after April, 2002, which is after the Liberty policies became effective. Therefore, Liberty is not excused from its duty to defend based upon the non-occurrence of property damage during its coverage period.

In the alternative, Liberty claims that it does not have a duty to defend because of the loss-in-progress doctrine, *i.e.*, Liberty argues that the *Marquette* petition alleges that Jotun was aware of DuroSeal problems before Liberty's coverage began.[94]  Zurich contends that the petition

---

[89] *Id.* ¶¶ III, VII.

[90] *Id.* ¶ V.

[91] *Id. ¶*  XXVIII.

[92] *Id.*

[93] *Id.* ¶ XXXI.

[94] Liberty's mem. supp. at 17-19.

only states that Jotun should have been aware of alleged problems with DuroSeal, which is not enough to bar coverage under the fortuity doctrine.[95]

The petition does contain one paragraph alleging actual knowledge on the part of "the other defendants," including Jotun, of complaints regarding DuroSeal failures.[96]  However, as previously noted, if the petition contains a claim that is not unambiguously excluded from coverage, the insurer has a duty to defend.  *See Coleman*, 418 F.3d at 523.  While this actual knowledge allegation may have unambiguously excluded coverage for some of the claims, the paragraph does not unambiguously exclude coverage for all of the claims.[97]  Therefore, Liberty has a duty to defend Jotun in the *Marquette* lawsuit.


### 6. *LeBeouf Petition*

On July 3, 2003, plaintiff, LeBeouf Towing Co., Inc., ("LeBeouf") filed a lawsuit in

---

[95] Zurich's reply mem. at 8-9.

[96] The pertinent paragraphs state:

> XVI.
>
> Prior to Marquette or Iowa's other involvement in these barges, [Trinity] and the other defendants had actual knowledge of complaints of coating adhesion problems and coating failures and excessive corrosion caused by MIC in similar barges manufactured by Trinity from other customers of Trinity which used Duro-Seal as the coating in its internal void spaces.
>
> XVII.
>
> Notwithstanding this information, Trinity and the other defendants recommended Duro-Seal for use in the Marquette and Iowa barges, even though they knew or should have known that Duro-Seal was inappropriate for use in these barges and failed to disclose all pertinent information to Marquette and Iowa.

*Marquette* pet. ¶¶ XVI-XVII.

[97] For example, the petition asserts a claim against Jotun for breach of implied warranties of fitness for a particular purpose. *Id.* ¶ LXII.  The above paragraphs state that Jotun had actual knowledge of the complaints, but state only that Jotun "knew or should have known" that DuroSeal was inappropriate for use in the barges. *Id.* ¶¶ XVI-XVII.  As noted earlier in this opinion, Louisiana law has not relieved insurers from a duty to defend when an insured "should have known"; rather, the jurisprudence only relieves the duty if the insured had actual knowledge of a prior loss.  The allegations in the petition do not so establish.

Louisiana state court against defendants, Trinity, Jotun, and Ashland, Inc. ("Ashland").[98]  From

1994 to 2002, Trinity allegedly constructed twenty-six double-hulled, inland tank barges for

LeBeouf.[99]  Certain of the barges were to be coated with a coating manufactured by Ashland and

the others were to be coated with a Jotun coating.[100]

On or about February, 2003, as part of general inspections, failure of the coating was

noticed in certain barges; LeBeouf allegedly immediately notified Trinity.[101]  LeBeouf

commenced extensive inspections of the Trinity barges; following surveys of the damaged

barges, LeBeouf was notified that the corrosive conditions were caused by MIC.[102]

The property damage occurred in February, 2003, when the damage manifested during

general inspections.  This was within the period of Liberty's insurance coverage.  Therefore,

Liberty's duty to defend was triggered, absent a different exclusion.

Liberty also contends that it has no duty to defend based upon the loss-in-progress

doctrine because Jotun knew of the problems with its coating products.[103]  Zurich claims that the

petition does not set forth actual knowledge on Jotun's part.[104]  The Court agrees–the allegations

in the petition do not set forth that Jotun had actual knowledge of the loss prior to the effective

---

[98] *LeBeouf* pet.  Ashland is allegedly the manufacturer and developer of Tectyl-400, a coating used on barges.  *Id.* ¶¶ V-VI.
      The petition sets forth claims for breach of contract, breach of express and implied warranties, negligence and gross negligence, misrepresentation, and failure to disclose.  *Id.* ¶¶ XLI, XLVII.

[99] *Id.* ¶ III.

[100] *Id.* ¶ V.

[101] *Id.* ¶ XVII.

[102] *Id.* ¶¶ XIX-XX.

[103] Liberty's mem. supp. at 18-19.

[104] Zurich's reply mem. supp. at 8-9.

coverage date of the Liberty policies.[105]  Because the *LeBeouf* petition does not unambiguously exclude coverage for all claims against Jotun, Liberty has a duty to defend in the *LeBeouf* lawsuit.

### 7. *Flowers Complaint and Amended Complaint*[106]

On October 7, 2002, plaintiff, J. Russell Flowers, Inc., ("JRF") filed a lawsuit in the Northern District of Mississippi against Jotun, Trinity, and Lee.[107]  The lawsuit arises out of the sale by Trinity to JRF of fifty-six steel barges for use in the marine transportation business.[108]

Beginning in December, 1996, JRF and Trinity entered into a series of contracts for construction and sale of the barges, each of which was coated with DuroSeal.[109]  The barges were delivered to JRF beginning in September, 1997, and ending in March, 2000.[110]

In the summer of 1999, JRF discovered DuroSeal coating failures and excessive rust and

---

[105] Specifically, the petition states:
> Upon information and belief, the research evidence, which indicates that Tectyl-400 and Jotun coatings are ineffective against corrosion, was known or should have been known to defendants well prior to the commencement of the construction of the barges.

*LeBeouf* pet. ¶ XXVI.

[106] The amended complaint does not change any of the relevant facts for this inquiry and, therefore, will be considered at the same time as the original complaint.

[107] *Flowers* compl. at 1.  The complaint and amended complaint bring claims against Trinity for fraudulent inducement for rescission or for actual and punitive damages, declaratory judgment, negligent misrepresentation, breach of contract and warranty, and failure of essential purpose and breach of implied warranties.  *Id.* counts 1-6; *Flowers* am. compl. counts 1-6.  The complaint and amended complaint bring claims against Jotun for fraudulent misrepresentation and negligent misrepresentation.  *Flowers* compl. counts 7-8; *Flowers* am. compl. counts 10-11. Finally, the complaint and amended complaint state claims against Jotun and Lee for breach of implied warranties. *Flowers* compl. count 9; *Flowers* am. compl. count 12.
> The amended complaint adds a claim against Trinity for negligence, claims against Jotun for negligence and products and strict liability, and a claim against Lee for negligence.  *Flowers* am. compl. counts 7-9, 13.

[108] *Flowers* compl. ¶ 7; *Flowers* am. compl. ¶ 7.

[109] *Flowers* compl. ¶¶ 7, 31; *Flowers* am. compl. ¶¶ 7, 54.

[110] *Flowers* compl. ¶ 8; *Flowers* am. compl. ¶ 8.

corrosion in the void compartments of certain of the barges.[111]  JRF notified Trinity of these failures on August 1, 1999, and requested that Trinity investigate the cause of the failures.[112] Since it first discovered barges with DuroSeal problems, JRF has inspected and continues to inspect its barges, discovering additional DuroSeal failures and severe rust, corrosion, and pitting of steel in the void compartments.[113]

The property damage manifested itself, at the latest, in the summer of 1999, when the damage manifested as coating failures and excessive rusting.  Liberty's insurance coverage did not begin until January 1, 2002, which is after the property damage occurred.  Because Liberty's policies require that the property damage occur during the coverage period, Liberty has no duty to defend Jotun in the *Flowers* lawsuit.

### 8.  *Florida Marine Petition and Supplemental Petitions*

On May 15, 2002, plaintiffs, Florida Marine Transporters, Inc., ("Florida Marine") and JAR Assets, Inc., ("JAR") filed a petition in Louisiana state court against Trinity, Jotun, and Lee.[114]  The lawsuit arises out of construction contracts for the sale by Trinity of eighteen double-hulled inland tank barges for use in the marine transportation industry.[115]

Between June 30, 1998, and May 31, 2000, the eighteen barges, each coated with

---

[111] *Flowers* compl. ¶ 40; *Flowers* am. compl. ¶ 63.

[112] *Flowers* compl. ¶ 41; *Flowers* am. compl. ¶¶ 29, 64.

[113] *Flowers* compl. ¶ 44; *Flowers* am. compl. ¶ 67.

[114] *Fla. Marine* pet.  Plaintiffs brought claims against defendants for breach of contract, breach of express and implied warranties, fraudulent misrepresentation, negligence and gross negligence, products liability, and fraudulent and intentional concealment.  *Id.* ¶¶ L, LXIV-LXV, LXIX.

[115] *Id.* ¶¶ III-IV.

DuroSeal, were constructed by Trinity; each of the barges is owned and/or operated by Florida Marine.[116]  On or about August, 2000, as part of general warranty inspections, failure of DuroSeal to adhere was noticed in certain barges; Trinity was immediately notified.[117]  After this discovery, a survey was completed and an orange-red rust was present in the interior void compartments.[118]

In December, 2001, while inspecting a barge, boils, blisters, or carbuncles under the DuroSeal were noticed, as well as corrosion pits.[119]  Due to this corrosive pitting, Florida Marine conducted extensive inspections of the barges in mid-December, 2001.[120]  During the course of the inspections, a corrosion engineer hired by Trinity explained that the damage appeared to be caused by MIC.[121]

On October 16, 2002, a supplemental petition was filed, alleging that in July and August, 2000, as part of general warranty inspections, the failure of DuroSeal to adhere was noticed in certain barges.[122]

Because the property damage could have occurred, at the latest, when the corrosion pits

---

[116] *Id.* ¶¶ IV, VI-VII, XI.  Specifically, eleven of the barges are owned by ACF Acceptance Barge I, LLC ("ACF"); pursuant to a Bareboat Charter Agreement, Florida Marine was the owner *pro hac vice*, charterer, and operator of these barges.  *Id.* ¶ VI.  Three of the barges are owned by Mid-Continent Marine Partnership; pursuant to a Bareboat Charter Agreement, Florida Marine was the owner *pro hac vice*, charterer, and operator of these barges. *Id.* ¶ VII.  Four of the barges are owned by JAR and operated by Florida Marine.  *Id.* ¶ VIII.

[117] *Id.* ¶ XXVIII.

[118] *Id.* ¶ XXIX.

[119] *Id.* ¶ XXXIII.

[120] *Id.* ¶ XXXIV.

[121] *Id.* ¶ XXXVI.

[122] *Fla. Marine* supp. pet. ¶ XXVIII.  The second and third supplemental petitions did not add any facts that are relevant to the Court's analysis.

manifested in mid-December, 2001, the property damage occurred before the effective date of Liberty's insurance coverage. Accordingly, Liberty has no duty to defend Jotun in this lawsuit.

### 9. ACF Petition and Supplemental Petition

On December 4, 2002, plaintiff, ACF Acceptance Barge I, LLC, ("ACF") filed a lawsuit in Louisiana state court against Trinity, Jotun, and Lee.[123] The lawsuit arises out of the sale of eleven barges, which were purchased by ACF from Trinity and constructed between October 8, 1999, and May 31, 2000, for use in the marine transportation industry.[124] The barges were allegedly coated with DuroSeal.[125]

Florida Marine advised ACF in February, 2002, of the damage it discovered during the extensive inspections of the barges in mid-December, 2001.[126] The damage to the barges allegedly consisted of boils, blisters, carbuncles, and corrosive pits caused, according to a corrosion engineer, by MIC.[127]

The damage manifested itself, at the latest, when Florida Marine became aware of the damage in mid-December, 2001. Because this was before the effective date of Liberty's insurance coverage, Liberty has no duty to defend Jotun in the *ACF* lawsuit.

---

[123] *ACF* pet. ACF brought claims against Trinity, Jotun, and Lee for fraud, fraudulent misrepresentation, unfair and deceptive trade practices, breach of implied warranty against redhibitory vices and defects and warranties of merchantability and fitness for a particular purpose, and products liability for defective, unfit, and/or unreasonably dangerous characteristics. *Id.* ¶¶ 70-71. ACF also brought claims against Trinity for fraudulent inducement and concealment, negligent misrepresentation, and bad faith breach of contract. *Id.* ¶ 70.

The supplemental petition added, as defendants, Molecular, International, Valspar, and Polyset. *ACF* supp. pet. ¶ 1.

[124] *ACF* pet. ¶¶ 2-3, 8.

[125] *Id.* ¶ 20.

[126] *Id.* ¶ 33.

[127] *Id.* ¶¶ 30, 34.

F.      *Jotun's Ability To Recover Attorney's Fees and Costs in the DuroSeal Lawsuits*

Jotun's counterclaim seeks, only with respect to the *Waxler* and *Puettmann* lawsuits, a declaration as to Liberty's duty to defend and indemnify, as well as payment for attorney's fees and other litigation expenses incurred during the defense of the *Waxler* and *Puettmann* lawsuits.[128]  The Court has determined that Liberty has a duty to defend Jotun in the amended petition in the *Waxler* lawsuit and in the *Puettmann* lawsuit.

Concerning Jotun's claims against Liberty for repayment of expenses incurred defending *Waxler* and *Puettman*, Liberty argues that if "an insurer declines to defend the insured, but the insured nevertheless receives a defense from another insurer," the insured suffers no damage and cannot be reimbursed.[129]  Liberty contends that Jotun has received one-hundred percent of its reasonable defense costs in *Waxler* and *Puettmann* and, therefore, Jotun cannot be reimbursed by Liberty.[130]  Jotun argues that it has not been reimbursed for one-hundred percent of its reasonable defense costs in *Waxler* and *Puettmann*.[131]

"Under Louisiana law, an insurer that breaches its duty to defend its insured is 'liable in damages for attorney fees and costs the insured incurs in defending the suit.'"  *Coleman*, 418 F.3d at 525 (*quoting Bossier Plaza Assocs. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 813 So. 2d 1114, 1119 (La. Ct. App. 2002)).  If all of Jotun's defense costs have been paid by Zurich, however, then it cannot recover.  *Vaughn v. Franklin*, 785 So. 2d 79, 91 (La. Ct. App. 2001) ("While St. Paul acted arbitrarily in failing to provide a defense, the insureds were not harmed

---

[128] Countercl. ¶¶ 5, 11.

[129] Liberty's mem. supp. at 26.

[130] *Id.* at 28.

[131] Jotun's opp'n to Liberty's mot. at 14-15.

-34-

here.  The co-insurer simply had to bear the costs of defense alone when those costs should have been shared by St. Paul.").

Jotun's defense costs have not been reimbursed in full for the *Waxler* and *Puettmann* lawsuits; Zurich has agreed to pay sixty percent of the attorney's fees.[132]  Because all of Jotun's defense costs have not been recovered, Jotun may be reimbursed for the reasonable costs of defense paid by Jotun and not paid by Zurich.  *See Coleman*, 418 F.3d at 525; *Smith v. Reliance Ins. Co. of Ill.*, 807 So. 2d 1010, 1022 (La. Ct. App. 2002) ("[The insurer] must underwrite reasonable costs incurred by the insured.").

G.   *Jotun's Ability To Recover Attorney's Fees Incurred in the Instant Lawsuit*

With respect to Jotun's claims that it be reimbursed for attorney's fees and costs in this action, Liberty argues that Jotun cannot recover these fees pursuant to Louisiana law.[133]  Jotun claims that Louisiana Revised Statutes §§ 22:658 and 22:1220 provide an award of attorney's fees as a result of its having to enforce Liberty's duty to defend.[134]

"[T]he insurance contract [does] not impose a duty on the insurer to pay attorney's fees in connection with the insured's pursuit of the coverage issues. . . . .  Generally, if the insured hires an attorney to represent him in coverage disputes, he will have to bear those costs himself." *Steptore v. Masco Constr. Co.*, 643 So. 2d 1213, 1218 (La. 1994); *see Dowden v. Leebo's Stores, Inc.*, 877 So. 2d 353, 356 (La. Ct. App. 2004) ("Generally, an insured can recover attorney fees associated with its defense of the underlying action, but not with its litigation of the coverage

---

[132] R. Doc. No. 75-3, Jotun's mem. opp'n to Liberty's mot., decl. of Emile Oustalet ¶ 2.

[133] Liberty's mem. supp. at 29-30.

[134] Jotun's mem. opp'n to Liberty's mot. at 15-16.  Attorney's fees are only awarded in Louisiana when authorized by contract or statute.  *Steptore v. Masco Constr. Co.*, 643 So. 2d 1213, 1218 (La. 1994).

issue.").  Some Louisiana courts have, however, allowed for the imposition of attorney's fees and penalties pursuant to Louisiana Revised Statute §§ 22:658 and 22:1220.  *See, e.g.*, *Credeur v. McCullough*, 702 So. 2d 985, 987 (La. Ct. App. 1997) (holding that a third-party claimant could be awarded attorney's fees and penalties pursuant to § 22:1220 because the insurer's failure to defend was arbitrary and capricious).  *But see, e.g.*, *Howell v. Am. Cas. Co. of Reading, PA*, 691 So. 2d 715, 727 (La. Ct. App. 1997) (holding that an insured could not recover attorney's fees, pursuant to § 22:658, for litigating the coverage issue because the insurer did not act arbitrarily or capriciously and the insurer's coverage defense was not frivolous).

Jotun has failed to allege in its counterclaim that it is seeking attorney's fees pursuant to these sections.  Nor has Jotun alleged any facts or produced any summary judgment type evidence showing that Liberty acted arbitrarily or capriciously, as required by those statutes.  Therefore, as the pleadings now stand, Jotun is not entitled to recover attorney's fees and costs incurred in the current lawsuit.[135]

### H.     Zurich's Right To Reimbursement

As fully set forth in the Court's order of March 24, 2008, Zurich may have a claim for legal contribution and subrogation against Liberty in the lawsuits in which Liberty has a duty to

---

[135] Furthermore, § 22:1220 does not provide compensation for attorney's fees.  *See, e.g.*, *Calogero v. Safeway Ins. Co. of La.*, 753 So. 2d 170, 174 (La. 2000).  With respect to § 22:658, attorney's fees did not become recoverable until June 2006, when the Louisiana Legislature passed an amendment reinstating a provision for reasonable attorney's fees and costs.  *See* 2006 La. Acts No. 813 § 1.  These changes went into effect on August 15, 2006, and are not applied retroactively.  *See, e.g.*, *Ferguson v. State Farm Ins. Co.*, Civil Action No. 06-3936, 2007 WL 1378507, at *3 (E.D. La. May 9, 2007) (Berrigan, C.J.) (*citing Lewis v. State Farm Ins. Co.*, 946 So. 2d 708, 728-29 (La. Ct. App. 2006)); *Weiss v. Allstate Ins. Co.*, Civil Action No. 06-3774, 2007 WL 1017341, at *3 (E.D. La. Mar. 28, 2007) (Vance, J.).  The Court need not decide the version of § 22:658 applicable in this case, however, because the Court has decided that Jotun has inadequately alleged that Liberty was arbitrary and capricious.

To the extent that Jotun seeks costs associated with this coverage dispute, that is governed by Federal Rule of Civil Procedure 54(d).  Rule 54(d) provides that costs "should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d).

defend.[136]


I.      *Claims Regarding Liberty's Duty To Indemnify*

Both Liberty's complaint and Jotun's counterclaim, as part of each party's declaratory

judgment claim, ask the Court to declare whether Liberty has a duty to indemnify Jotun in

*Waxler* and *Puettmann.*[137]  Jotun filed a motion to stay or, in the alternative, to dismiss without

prejudice these claims as premature because the underlying DuroSeal lawsuits have not been

fully adjudicated.[138]  Jotun claims that, while the issue of Liberty's duty to defend is justiciable

pursuant to the Declaratory Judgment Act, the issue of Liberty's duty to indemnify is not.[139]

"An actual or justiciable controversy may exist for purposes of the Declaratory Judgment

Act when 'an insurance carrier seeks a declaratory judgment that it has a duty neither to defend

nor indemnify its insured in a state court action that has not yet proceeded to judgment.'"

*Scottsdale Ins. Co. v. Bayou Land & Marine*, No. Civ.A. 98-3668, 1999 WL 777714, at *2 (E.D.

La. Sept. 30, 1999) (Vance, J.).  "[I]n order to consider the propriety of a stay pending

disposition of state court actions, the federal and state cases must be parallel, meaning that they

involve the same parties and the same issues."  *Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*,

129 F.3d 781, 785 (5th Cir. 1997).  The underlying state court lawsuits do not involve issues of

coverage, policy interpretation, or Liberty's duty to defend.  Exercising its discretion, the Court

finds that the declaratory judgment claims regarding Liberty's duty to indemnify are appropriate

---

[136] R. Doc. No. 108.

[137] Compl. ¶ 12; countercl.¶ 5.

[138] R. Doc. No. 103.

[139] R. Doc. No. 103-2, Jotun's mem. supp. mot. stay or dismiss at 5.

for determination, despite the pending state court lawsuits.

Accordingly,

**IT IS ORDERED** that Zurich's motion for summary judgment on its counterclaim against Liberty[140] is **GRANTED IN PART AND DENIED IN PART**.  **IT IS FURTHER ORDERED** that Liberty has a **DUTY TO DEFEND** Jotun in the following lawsuits:  (1) *Waxler Transportation Co. v. Trinity Marine Products, Inc.*, No. 49-741, amended petition; (2) *Puettmann v. Trinity Marine Products, Inc.*, No. 49-605; (3) *Marquette Transportation Co. v. Trinity Marine Products, Inc.*, No. 49-605; and (4) *LeBeouf Bros. Towing Co. v. Trinity Marine Products, Inc.*, No. 50-085.  **IT IS FURTHER ORDERED** that Zurich's motion for summary judgment with respect to its legal subrogation and contribution claims is **DENIED**.

**IT IS FURTHER ORDERED** that Jotun's motion for summary judgment on its counterclaim against Liberty[141] is **GRANTED IN PART AND DENIED IN PART**.  **IT IS ORDERED** that Liberty has a **DUTY TO DEFEND** Jotun in the following lawsuits:  (1) *Waxler Transportation Co. v. Trinity Marine Products, Inc.*, No. 49-741, amended petition; and (2) *Puettmann v. Trinity Marine Products, Inc.*, No. 49-605.  **IT IS FURTHER ORDERED** that Jotun's motion for summary judgment with respect to its claim for reimbursement of attorney's fees incurred in this lawsuit is **DENIED**.  **IT IS FURTHER ORDERED** that Jotun's claim seeking attorney's fees in connection with this lawsuit is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Liberty's motion for summary judgment on Zurich's counterclaim and Jotun's counterclaim against it[142] is **GRANTED IN PART AND DENIED IN**

---

[140] R. Doc. No. 62.

[141] R. Doc. No. 65.

[142] R. Doc. No. 70.

PART.  **IT IS ORDERED** that Liberty has **NO DUTY TO DEFEND** Jotun in the following lawsuits:  (1) *Waxler Transportation Co. v. Trinity Marine Products, Inc.*, No. 49-741, original petition; (2) *Flowers v. Trinity*, No. 4:02-CV-245; (3) *Florida Marine Transporters, Inc. v. Trinity Marine Products, Inc.*, No. 49-819; (4) *ACF Acceptance Barge I, LLC v. Trinity Marine Products, Inc.*, No. 49-320.  **IT IS FURTHER ORDERED** that all claims relating to Liberty's duty to defend in the above-named lawsuits in which Liberty has no duty to defend are **DISMISSED WITH PREJUDICE**.  **IT IS FURTHER ORDERED** that Liberty's motion for summary judgment with respect to Jotun's claim for reimbursement of defense costs expended in the underlying DuroSeal lawsuits is **DENIED**.

**IT IS FURTHER ORDERED** that Jotun's motion to stay or, in the alternative, to dismiss without prejudice[143] is **DENIED**.

New Orleans, Louisiana, April 2, 2008.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[143] R. Doc. No. 103.