# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LIBERTY MUTUAL INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **No. 07-3114** |
| **JOTUN PAINTS, INC.,** *et al.* | **SECTION: I/5** |

## ORDER AND REASONS

Before the Court is a motion for partial summary judgment, filed on behalf of Liberty Mutual Insurance Company ("Liberty"), requesting a declaration by this Court with respect to the periods for which Liberty has a duty to defend Jotun Paints, Inc. and Jotun, Inc. (collectively "Jotun") in certain lawsuits.[1] Zurich American Insurance Company ("Zurich") as well as Jotun have filed opposition memoranda.[2] For the following reasons, Liberty's motion is **GRANTED IN PART** and **DENIED IN PART**.

### *BACKGROUND*

Liberty insured Jotun pursuant to four successive primary commercial general liability ("CGL") policies, (collectively, "Liberty policies") in effect from January 1, 2002, to January 1, 2006.[3] The Liberty policies provide that Liberty has an obligation to defend Jotun in certain

---

[1] R. Doc. No. 188.

[2] R. Doc. Nos. 201, 222.

[3] R. Doc. No. 41, Liberty's first mot. summ. j. on Zurich's countercl., ex. A, Liberty policies.

1

lawsuits against Jotun.[4] Several lawsuits were brought against Jotun for damages resulting from the application of DuroSeal to barges, allegedly causing an acceleration of the corrosive process; DuroSeal is a coating product Jotun allegedly developed, marketed, recommended, and sold.[5] The DuroSeal lawsuits include the following: (1) <u>Waxler Transportation Co. v. Trininty Marine Products, Inc.</u>, No. 49-741; (2) <u>Puettmann v. Trinity Marine Products, Inc.</u>, No. 54-087; (3) <u>Marquette Transportation Co. v. Trinity Marine Products, Inc.</u>, No. 49-605; (4) <u>LeBeouf Bros. Towing Co. v. Trinity Marine Products, Inc.</u>, No. 50-085; (5) <u>J. Russell Flowers, Inc. v. Trinity Marine Products, Inc.</u>, No. 4:02-CV-245; (6) <u>Florida Marine Transporters, Inc. v. Trinity Marine</u>

---

[4] Liberty policies § I(A)(1)(a), (b). Those sections provide, in pertinent part:
    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
    b. This insurance applies to "bodily injury" and "property damage" only if:
        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
        (2) The "bodily injury" or "property damage" occurs during the policy period.
<u>Id.</u> Pursuant to the Liberty policies, property damage is defined as:
    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
<u>Id.</u> § V(15). "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." <u>Id.</u> § V(12).

[5] R. Doc. No. 62-24, Zurich's mot. summ. j., ex. 17, <u>Waxler</u> pet. ¶¶ 6-7, 21, 32-33; R. Doc. No. 62-25, Zurich's mot. summ. j., ex. 18, <u>Waxler</u> am. pet. ¶¶ 6-7, 27, 37; R. Doc. No. 62-23, Zurich's mot. summ. j., ex. 16, <u>Puettmann</u> pet. ¶¶ 2, 12, 25-26; R. Doc. No. 62-22, Zurich's mot. summ. j., ex. 15, <u>Marquette</u> pet. ¶¶ II, XIII, XXVII-XXX; R. Doc. No. 62-21, Zurich's mot. summ. j., ex. 14, <u>LeBeouf</u> pet. ¶¶ I, XVII, XXXI; R. Doc. No. 62-19, Zurich's mot. summ. j., ex. 12, <u>Flowers</u> compl. ¶¶ 4, 20-22; R. Doc. No. 62-20, Zurich's mot. summ. j., ex. 13, <u>Flowers</u> am. compl. ¶¶ 4, 18, 42-44; R. Doc. No. 62-15, Zurich's mot. summ. j., ex. 8, <u>Fla. Marine</u> pet. ¶¶ I, X, XVI, XXVIII, XXXIII; R. Doc. No. 62-13, Zurich's mot. summ. j., ex. 6, <u>ACF</u> pet. ¶¶ 1, 14, 16, 30-31.
    The <u>LeBeouf</u> petition and the <u>Flowers</u> complaint and amended complaint do not make Jotun, Inc., a defendant in the lawsuits; rather, only Jotun Paints, Inc., is named. <u>LeBeouf</u> pet. ¶ I; <u>Flowers</u> compl. ¶ 4; <u>Flowers</u> am. compl. ¶ 4. Further, the <u>LeBeouf</u> petition does not relate to DuroSeal, but a similar product that is also manufactured by Jotun. <u>LeBeouf</u> pet.

2

Products, Inc., No. 49-819; and (7) ACF Acceptance Barge I, LLC v. Trinity Marine Products, Inc., No. 49-320.[6]

On June 4, 2007, Liberty filed its complaint in this Court seeking declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 (2006).[7] Liberty sought a declaration that it has no duty to defend or indemnify Jotun in Waxler and Puettmann, two of the lawsuits enumerated above.[8] Liberty also argued that it is entitled to reimbursement of any defense costs it has incurred in Waxler.[9]

On July 17, 2008, Jotun answered Liberty's complaint and asserted a counterclaim.[10] Jotun's counterclaim sought a declaration, pursuant to 28 U.S.C. § 2201, that Liberty has a duty to defend and indemnify Jotun for its defense costs in Waxler and Puettmann.[11]

On September 5, 2007, Zurich intervened as a defendant in this action, answering Liberty's complaint and asserting a counterclaim.[12] Zurich also insured Jotun pursuant to primary CGL policies; however, the Zurich policies began on March 29, 1999, and ended on January 1,

---

[6] Waxler pet.; Waxler am. pet.; Puettmann pet.; Marquette pet.; LeBeouf pet.; Flowers compl.; Flowers am. compl.; Fla. Marine pet.; R. Doc. No. 62-16, Zurich's mot. summ. j., ex. 9, Fla. Marine supp. pet.; R. Doc. No. 62-17, Zurich's mot. summ. j., ex. 10, Fla. Marine second supp. pet.; R. Doc. No. 62-18, Zurich's mot. summ. j., ex. 11, Fla. Marine third supp. pet; ACF pet.; R. Doc. No. 62-14, Zurich's mot. summ. j., ex. 7, ACF supp. pet.

[7] Compl.

[8] Id. at 12. Liberty only sought a declaration on its duty to defend and indemnify the Waxler and Puettmann lawsuits because Jotun never challenged Liberty's denial of its duty in the five other DuroSeal lawsuits. R. Doc. No. 41-6, Liberty's first mot. summ. j. on Zurich's countercl., ex. C, decl. of Marcia Rowell ¶ 4.

[9] Compl. ¶¶ 37-39.

[10] R. Doc. No. 11, Jotun's answer and countercl.

[11] Countercl. ¶ 5.

[12] R. Doc. No. 26, Intervenor answer and countercl. Zurich's motion to intervene was not opposed. R. Doc. No. 24-3, mot. to intervene, ex., Rule 7.6 certificate.

2002 (collectively, "Zurich policies").[13] The Zurich policies provide that it has a duty, under certain circumstances, to defend Jotun.[14] Zurich has been paying, with a full reservation of rights, for at least a portion of Jotun's costs of defense in all seven DuroSeal lawsuits.[15]

Zurich's counterclaim seeks a declaration, pursuant to the Declaratory Judgment Act, that Liberty has an obligation to defend each of the seven DuroSeal lawsuits listed above.[16] Zurich

---

[13] Liberty's first mot. summ. j. on Zurich's countercl., ex. B, Zurich policies.

[14] Zurich policies § I(A)(1)(a), (b). Those sections provide, in pertinent part:
    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
    b. This insurance applies to "bodily injury" and "property damage" only if:
        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
        (2) The "bodily injury" or "property damage" occurs during the policy period.
Id. Pursuant to the Zurich policies, property damage is defined as:
    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
Id. § V(17). "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. § V(13).

[15] R. Doc. No. 62-3, Zurich's mot. summ. j., statement of uncontested material facts ¶ 6 [hereinafter "SOF"]; R. Doc. No. 73-3, Liberty's response to Zurich's SOF at 2.

[16] Intervenor countercl. at 11. In 2004, Liberty denied defense and indemnification to Jotun in Marquette, LeBeouf, ACF, Florida Marine, and Flowers. Rowell decl. ¶ 4.
    Concerning the Waxler lawsuit, on February 24, 2004, Liberty denied defense and indemnification to Jotun. R. Doc. No. 62-38, Zurich's mot. summ. j., ex. 31, letter from Liberty to Jotun denying defense for Waxler. On June 18, 2005, Jotun renewed its demand for defense. R. Doc. No. 62-39, Zurich's mot. summ. j., ex. 32, letter from Jotun to Liberty regarding the Waxler amended petition. On January 27, 2006, Liberty accepted its duty to defend Jotun beginning on July 18, 2005, (the date of the letter sent to Liberty by Jotun renewing Jotun's demand) based upon the amended petition in Waxler. R. Doc. No. 62-40, Zurich's mot. summ. j., ex. 33, letter from Liberty to Jotun regarding Waxler. Liberty reserved its right to contest coverage. Id.
    Concerning the Puettmann lawsuit, on October 25, 2006, Liberty received the Puettmann petition and Jotun's demand for defense in the lawsuit. R. Doc. No. 65-21, Jotun's mot. summ. j., ex. P, letter from Liberty to Jotun denying defense. On January 19, 2007, Liberty denied defense and indemnification to Jotun in the Puettmann action. Id.

further asserts legal contribution and subrogation claims; Zurich argues that, pursuant to these legal theories, it is entitled to recover all or a portion of defense costs it has paid in defending Jotun in the DuroSeal lawsuits.[17]

On April 2, 2008, this Court ruled that Liberty has a duty to defend Jotun in <u>Waxler</u> (based on the amended petition), <u>Puettmann</u>, <u>Marquette</u>, and <u>LeBeouf</u>. In that same order, the Court stated that "Liberty's duty to defend Jotun in <u>Waxler</u> began on June 18, 2005, the date Liberty received the amended <u>Waxler</u> petition and Jotun renewed its demand for defense."[18] In its currently pending motion, Liberty seeks a ruling as to when its duty to defend in <u>Puettmann</u>, <u>Marquette</u>, and <u>LeBeouf</u> arose.

*LAW AND ANALYSIS*

I.      STANDARD OF LAW

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. <u>Celotex</u>, 477 U.S. at 323; <u>Fontenot v. Upjohn Co.</u>, 780

---

[17] Intervenor countercl. at 11. The Court previously dismissed Zurich's claims against Liberty for equitable and contractual contribution and subrogation. R. Doc. No. 108, order of March 24, 2008, at 17.

[18] R. Doc. No. 123, order and reasons 24.

5

F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. Id. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." Id. at 255; see Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

**II. DISCUSSION**

Liberty contends that its duty to defend commenced when it first received actual notice of the relevant lawsuits, Marquette, LeBeouf, and Puettmann. Liberty has submitted correspondence dated November 20, 2003, which provides notice of the LeBeouf and Marquette litigations,[19] and correspondence dated October 25, 2006, which provides notice of the Puettmann litigations.[20]

---

[19] See R. Doc. No. 188-3, ex. D.

[20] See R. Doc. No. 188-3, ex. E.

6

Jotun does not dispute that notice of the lawsuits was provided on those dates.[21]  However, Jotun and Zurich contend that litigation expenses incurred prior to notice of the litigation are recoverable from Liberty.

Applying Louisiana law, the Fifth Circuit has stated: "the insurer's duty to defend does not arise until it receives notice of a claim or suit."  Peavey Co. v. M/V ANPA, 971 F.2d 1168, 1178 (5th Cir. 1992); see also Transcon. Pipe Line Corp. v. Nat'l Union Fire Ins. Co of Pittsburgh, Pa., 378 F. Supp. 2d 729, 738-39 (M.D. La. 2005) ("[A]n insurer's duty to provide a defense does not arise until the insurer receives notice of the litigation, regardless of whether the insurance company is prejudiced by the late notice."); Rovira v. LaGoDa, INC., 551 So. 2d 790, 796 (La. Ct. App. 5th Cir. 1989) ("The duty to defend arises when the insurer receives notice of the litigation."); Gully & Assocs., Inc. v. Wausau Ins. Cos., 536 So. 2d 816, 818 (La. Ct. App. 1st Cir. 1988) ("[T]he insurer's duty to provide a defense does not arise until the insurer receives notice of the litigation.").  Citing this authority, Liberty seeks a ruling that its duty to defend in the four underlying cases did not arise until it first "received actual notice of the petitions"[22] and that the periods for which it is "responsible" began no sooner than when said notices were received.[23]

Jotun and Zurich argue that the Fifth Circuit qualified its holding in Peavey by stating: "Delayed notice of a claim, however, relieves the insurer of its obligation if the insurer was

---

[21] Zurich states that it "disputes several of the factual statements" asserted by Liberty.  Without the benefit of greater specificity, the Court cannot say that Zurich expressly rejects Liberty's allegations of when notice was tendered.  The Court finds that Liberty has carried its summary judgment burden by producing the correspondence dated November 20, 2003 and October 25, 2006.
  Meanwhile, both Jotun and Zurich dispute that notice of the amended Waxler petition was not provided to Liberty until June 18, 2005.  However, this Court has already determined that "Liberty's duty to defend Jotun in Waxler began on June 18, 2005."  R. Doc. No. 123, order and reasons 24 n.78.  The Court declines to disturb its prior ruling.

[22] R. Doc. No. 188-2, mem. supp. 6.

[23] Id. at 2.

7

actually prejudiced by delay." Peavey, 971 F.2d at 1178; see also Rovira, 551 So. 2d at 796. Because Liberty has not argued that it was actually prejudiced by any delay, they argue, Liberty cannot be relieved of its obligation to pay pre-notice defense costs.[24]

The "actual prejudice" language in Peavey and Rovira provides an exception to an insurer's duty to defend, i.e., it describes circumstances in which an insurer may be altogether relieved of an obligation to defend an insured. Liberty does not argue in the context of this motion that it has no duty to defend. Instead, it seeks a ruling on when that duty first arose. More specifically, it asks the Court to declare that "the period of time for which Liberty Mutual had a duty to defend . . . begins no earlier" than November 20, 2003 for Marquette and LeBeouf and no earlier than October 25, 2006 for Puettmann.

The Court interprets Liberty's motion to seek a declaration that its obligation to <u>pay defense costs</u> commenced no earlier than those dates.[25] Liberty does not direct the Court to any policy language or authority stating that the insurer is only obligated to pay those defense costs incurred <u>after</u> a duty to defend arises. Liberty's motion does not present the question of whether it owes defense costs from a particular date onward. When a duty to defend commences and what that duty entails are obviously distinct questions. The Court declines to enter the ruling on periods of "responsibility" sought by Liberty.

The Court notes that the Fifth Circuit's decision in Peavey does indicate that pre-notice litigation expenses are recoverable upon a showing of no actual prejudice to the insurer. Peavey, 971 F.2d at 178. Thus far in this litigation, there has been no showing of actual prejudice to

---

[24] R. Doc. No. 222, Jotun's mem. opp'n 2.

[25] Jotun and Zurich appear to make their arguments under the assumption that Liberty's motion seeks a ruling on whether it owes pre-notification defense expenses.

8

Liberty caused by any delayed notice. Therefore, the Court is unwilling to declare that all pre-notice litigation expenses are not owed.[26]

## III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Liberty's motion for partial summary judgment is **GRANTED** in the following respects: Liberty's duty to defend Jotun in Marquette and LeBeouf arose on November 20, 2003; Liberty's duty to defend Jotun in Puettmann arose on October 25, 2006.

**IT IS FURTHER ORDERED** that Liberty's motion for partial summary judgment is **DENIED** insofar as it seeks a declaration of specific periods of "responsibility" imposed by those duties to defend.

New Orleans, Louisiana, January 12, 2009.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[26] The Gully case, relied upon by the Fifth Circuit in Peavey, provides further guidance on this point. In Gully, the issue was whether a liability insurer must reimburse its insured for defense costs and attorney fees incurred in defending a claim prior to receiving notice of the claim. Gully, 536 So. 2d at 817. The court determined that the insurer was not denying coverage or trying to use the late notice as a basis for denying coverage. Id. at 818. The court went on to hold that the insurer was not responsible for litigation expenses incurred prior to its receiving notice of the claim from the insured. Id.